DAVIDSON *against* THE BOROUGH OF BRIDGEPORT.

Where it became material, in an action against an incorporated borough, for the price of a church clock sold and delivered to the defendants, to

prove that they had accepted the clock; and for this purpose, the plaintiff offered evidence to shew, that the warden and burgesses had taken charge of the clock, and caused it to be wound up and duly attended to, from the time of delivery to the time of trial, a period of more than four years; the defendants objected to such evidence, on the ground that a vote of the corporation was indispensable; the court admitted it, and the plaintiff obtained a verdict; on a motion for a new trial, by the defendants, it was held, 1. that the evidence offered was admissible, without shewing a vote of the corporation; 2. that the defendants could avail themselves of no other objection than that taken at the trial.

The mere giving, for an antecedent debt, of a note or a bill, which turns out to be unproductive, is not, in the absence of any agreement to receive it as payment, an extinguishment of such debt.

It is a general rule, that the payee of an indorsed note or bill cannot recover on his original demand, so long as such note or bill is outstanding in the hands of a third person.

But the mere indorsement of a bill or note, by the payee, is not payment of the original demand, even as to him.

Therefore, where *A.*, being indebted to *B.*, gave him a bill for the amount, which *B.* indorsed to *C.*, *B.*, at the same time, assigning to *C.* all his right to the debt due from *A.*; *C.* presented the bill for acceptance, which was refused; after which *C.* brought an action, in the name of *B.*, against *A.*, on the original indebtedness, and brought the bill into court unpaid; it was held, that such indorsement was no obstacle to a recovery.

THIS was an action of *assumpsit* for the price of a church clock; to which a count on two drafts and the common counts, were added.

The cause was tried at *Danbury, September* term, 1830, before *Daggett,* J.

At the request of the defendants, the plaintiff made a clock, and set it up in the *Presbyterian* church in the borough of *Bridgeport.* A committee, appointed by the defendants for the purpose, agreed to give him for it the sum of 220 dollars, and executed two drafts on the treasurer of the defendants, of 110 dollars each, payable to the order of the plaintiff, four months from date. These drafts, together with all the right of the plaintiff to the sum due from the defendants, were indorsed and delivered to *Tallman Perry,* since deceased; and he presented them to the treasurer, who refused to accept them. The executor of *Tallman* then brought this suit, in the plaintiff's name. The drafts were in court and unpaid.

The clock was to be an eight-day clock. The *time* part

60

run eight days, and kept good time ; but the *striking* part run only five days and an half. The striking part was not quite done, requiring about three hours work to complete it.

The plaintiff claimed, and introduced evidence to prove, that the defendants *accepted* the clock. To establish this point, he offered to shew, among other evidence, that the warden and burgesses, with full knowledge of the defects, had taken charge of the clock, and had caused it to be wound up and duly attended to, from the time it was put up, in *August*, 1826, to the time of trial. To this evidence the defendants objected, on the ground that their acceptance of the clock could be proved only by a duly authenticated vote of the corporation. The judge overruled the objection and admitted the evidence.

The plaintiff also claimed, and offered evidence to prove, that the striking part of the clock would run eight days, if the cord, by which the weight was suspended, was lengthened ; and that this could be done at small expence. The defendants insisted, that as the striking part of the clock did not run eight days, they were not bound to pay for it.

The defendants claimed, and offered evidence to prove, that the plaintiff had accepted the drafts in full of all demands for the clock ; and that by reason of the assignment of the drafts to *Perry,* this action could not be maintained ; and prayed the judge so to instruct the jury.

The judge charged the jury, that if they were satisfied from the proof, that the defendants had accepted the clock, and had never paid for it, except by the drafts, the plaintiff was entitled to recover its fair value, deducting what might be reasonable for its being in an unfinished state.

The jury gave a verdict in favour of the plaintiff, for 222 dollars, 95 cents ; and the defendants moved for a new trial.

*Hamlin* and *Wheeler,* in support of the motion, contended, 1. That an acceptance of the clock by the borough, could not be proved, by the acts of the warden and burgesses, who do not constitute the corporation ; nor were they agents for this purpose : In relation to this transaction, they were mere strangers. *The City of London* v. *Long,* 1 *Campb* 24, 5.

2. That *Davidson,* the plaintiff, having received two drafts for the clock, and passed them away by indorsement, cannot sue on the original cause of action. Neither can he sue on the drafts ; for the indorsement is evidence that the plaintiff

has received his money on them. *Chitt. Bills* 100. n. (1.) *Harris* v. *Johnson,* 3 *Cranch* 311. 318. He cannot recover on either of the common counts, so long as the drafts remain in the hands of the indorsee. There has been no offer to cancel the drafts. *Varner* v. *Nobleborough,* 2 *Greenl.* 121. *Hughes* v. *Wheeler,* 8 *Cowen* 77.

*Fairfield,*
June, 1831.

Davidson
*v.*
Bridgeport.

3. That the indorsee cannot recover in *Davidson's* name. The indorsee derives all his title from the bill, and can have no claim on any person, except the parties whose names are on the bill. But the indorsee cannot recover on the drafts, for want of notice of their dishonour. Without such notice, neither *Davidson* could recover, were he the real plaintiff, nor the indorsee in *Davidson's* name. *Chitt. Bills* 364. & n. 1. The indorsee cannot recover on the common counts, because no relation or privity exists between him and the defendants.

*Sherman,* contra, contended, 1. That the evidence offered to shew an acceptance of the clock, by the defendants, was properly received. It shewed, that the warden and burgesses had taken it and used it, for years, as the property of the borough. What was the objection? That a corporation can speak only by its votes. The evidence was not objected to, on the ground of irrelevancy. *Non constat* that there was not abundant proof of the authority of the warden and burgesses. To the objection made on the trial, the defendants must be confined here. *Reg. Gen.* 6 *Conn. Rep.* 327. Now, this was, unquestionably, an insufficient objection. That a specific vote of the corporation authorizing the acts done, was unnecessary, is too clear to require argument.

2. That the giving of the drafts to *Davidson,* was not a payment, by the defendants, of their debt. They drew on themselves, and then refused to accept or pay the drafts.

3. That the indorsement of the drafts by *Davidson,* was not payment as to him. The only reason why the indorsement of a bill is ever considered as payment, is, to prevent the drawers being twice charged. But where the suit is brought in the name of the payee, and the bills are brought into court to be cancelled, there is no such danger. These drafts are virtually resumed by *Davidson.* He is now the holder—*i. e.* if they are not in the custody of the court.

4. That the suit is well brought in *Davidson's* name. He is the only person that can sue for the clock. The defendants

*Fairfield,* have had the clock, and owe some body for it. The verdict
*June, 1831.* has done perfect justice. Will this Court disturb it ?

Davidson
*v.*
Bridgeport.

BISSELL, J. 1. The defendants contend, that the acts of the warden and burgesses in relation to the clock, ought not to have been admitted to prove an acceptance of the clock. Upon what principle, it may be asked, can the objection taken be sustained for a moment ? There surely is no process, by which the plaintiff could have compelled the borough of *Bridge-port* to pass a vote of acceptance. Whether they would do so or not, was with them entirely optional. The objection, then comes to this ; that the defendants may use the clock forever, and yet, by neglecting to pass a vote accepting it, may avoid payment, during the same reasonable period. Can such an objection be seriously insisted on ? The defendants counsel seem to think otherwise ; for they have here abandoned the ground taken in the court below, and now insist, that the evidence offered was inadmissible, inasmuch as it does not appear, that the wardens and burgesses were the authorized agents of the borough of *Bridgeport.* I am satisfied, that as this objection was not taken at the trial, it cannot be raised here. The rule of this Court prescribes, that in every motion for a new trial, the precise point made by the party, and the precise opinion expressed by the court, shall appear upon the face of the motion. 6 *Conn. Rep.* 327. Under this rule, no point not made in the court below, can be made here. But the rule and this construction of it are in the highest degree reasonable ; and were a different practice to prevail, it is obvious, that the greatest injustice might be done ; as the objection, if taken below, might have been satisfactorily met and obviated. A motion for a new trial does not profess to set forth the entire case, nor to detail all the evidence offered to the jury, but only so much of it as may be necessary to present fairly the questions raised and decided in the court below. Thus, in the motion now before us, it is stated, that the evidence objected to was offered " among other evidence." What that " other evidence" was, we do not know, and cannot know. For aught that appears, it went directly to prove the authority of the warden and burgesses. At any rate, it is sufficient that the evidence was not objected to, on the ground of want of authority in them. I am, therefore, clearly of opinion, that on this ground a new trial ought not to be granted.

2. The defendants except to the charge to the jury, and on that ground move for a new trial. There is no pretence, that there was any evidence in the cause, which went to shew, that the drafts were received *as payment*. The mere giving of the drafts, therefore, was not payment ; nor did it prevent a resort to the original cause of action ; for the rule is now too well settled to admit of dispute, that if there be an antecedent debt, and a note, draft or bill is taken, which turns out to be unproductive, the demand for the antecedent debt may be resorted to, unless it was expressly agreed, that the note, draft or bill should be received as payment.

It is, however, said, that *Davidson* having indorsed these drafts, they thus became payment *as to him ;* and therefore, he cannot resort to his original demand. There is no foundation for this position ; and it is supported by no authority. A note or bill not received as payment, does not become such, by indorsement *merely.* Accordingly, it has been uniformly holden, that if the indorser resume the note or bill, the same being unpaid, he may resort to his original cause of action. And it has been conceded, in the argument of this case, that if *Davidson* had become lawfully repossessed of these drafts, they having been dishonoured in the hands of his indorsee, he might have treated them as so much waste paper, and have recovered on the count for goods sold and delivered. The mere indorsement of these drafts, therefore, was no payment as to *Davidson.* But the general rule, undoubtedly, is, that the payee of an indorsed note or bill cannot recover on his original demand, so long as such note or bill is outstanding in the hands of a third person. And the reason is, not that the debt has been paid, but that a suit may afterwards be brought by the indorsee, and so the party may be compelled to pay the debt a second time. But when the reason of the rule ceases, the rule itself should cease. Where the defendant has actually paid nothing, and the plaintiff has received nothing for services rendered by the one, and the benefits of which have been enjoyed by the other, there is, *prima facie,* a meritorious cause of action ; and the plaintiff ought not to be turned round, because an unproductive note or bill has been given and indorsed, unless that course should be demanded, by a regard to the safety of the defendant. Thus, where an indorsed note has been destroyed, or is delivered up in court, or cancelled, or is so disposed of, as that it can never come against the parties to it, the objection to a recovery is done away, and

HARVARD LAW LIBRARY

*Fairfield,*
June, 1832.

Davicson
*v.*
Bridgeport.

a suit on the original indebtedness may be sustained. *Pierson* v. *Hutchinson,* 2 *Campb. Rep.* 211.

How do these principles apply to the case now under consideration? The suit is brought *in the name of Davidson;* but the motion finds, that it is brought by, and for the benefit of, the executor of *Tallman Perry.* Is he, upon the facts found, entitled to have this action in *Davidson's* name? The motion states, not only that the drafts were negotiated, but also that all the right of *Davidson* to the sum due from the defendants, for the clock, was indorsed and delivered to *Perry.* He presented the drafts for acceptance, which was refused; and thereupon *Perry's* executor, after his decease, brought this action, in *Davidson's* name. Now, can there be a doubt, upon this statement, that an equitable right to the original cause of action passed from *Davidson* to *Perry;* and that he might maintain a suit upon it, in the name of the assignor? Does not the language of the motion imply, that the evidence of this debt, be it what it might, was assigned and delivered over? Does the fact, that the drafts were also indorsed and delivered, vary the case? True, *Perry* could not sue on them, (they being indorsed) in the name of *Davidson;* nor could an action be maintained upon them against these defendants, in the name of any one, as they had never accepted the drafts. Still the defendants owed a debt, which they were bound to pay, to which *Perry* had an equitable title, and which could be sued only in *Davidson's* name. Why should he not thus sue and recover?

The only objection is, that an action may hereafter be brought on the drafts; and that a recovery here will be no bar. But is it so? That no such action can be brought against these defendants, is very obvious, and for the reason that has been given. Suppose, then, that an action were to be brought, by the executor of *Perry,* against the drawers, the only persons liable; would not this verdict be evidence, and would not a recovery here be a bar? The drafts are counted upon, as well as the original cause of action, and a general verdict is taken. This recovery is had in favour of *Perry's* executor, by whom the drafts are brought into court. Can *he* afterwards sue the drawers, and may not this judgment be interposed? Suppose there had been no assignment, no indorsement of the drafts, and the action had been brought by *Davidson* himself, for his own benefit; would not the same objection have lain to a recovery on the common counts, which is here

urged? And might it not have been urged with the same force, that he might afterwards sue the drawers upon the drafts? The truth is, that in one case as well as in the other, they are effectually within the controul of the court; and judgment might be stayed until they were delivered up or cancelled. <span></span>*Fairfield, June, 1831. Davidson v. Bridgeport.*

I would only remark, in conclusion, that these drafts were about four years over-due, at the time of trial; and now, one objection urged against a recovery, is, that no notice of their dishonour was ever given to the drawers; and they are here offered to be delivered up or cancelled. Under such circumstances, ought we to disturb a verdict, which is according to the justice of the case? I think not; and would not advise a new trial.

DAGEETT, J. was of the same opinion.

HOSMER, Ch. J. concurred as to the admission of the evidence offered by the plaintiff to prove an acceptance of the clock, by the defendants. The objection made at the trial, is the only one that can be considered here. On the other part of the case, he concurred in the opinion, that the mere giving of the drafts was not payment of the debt. But he had doubts whether the drafts were, at the trial, under the controul of *Davidson*, the plaintiff in the suit. This depends on the construction of the motion. It is only found, that " the drafts were in court and unpaid." As the executor of *Perry* prosecuted the suit in *Davidson*'s name, and *Davidson* was not in court, he was inclined to think, that the drafts were to be considered as in the hands of such executor, and not under *Davidson*'s controul; and consequently, that *Davidson* could not, under these circumstances, maintain a suit founded on the original indebtedness.

PETERS, J. having been absent when the case was argued, and WILLIAMS, J. being related to a party in interest, gave no opinion.

New trial not to be granted.