GEORGE J. BASSETT, BANK COMMISSIONER, *vs.* THE MERCHANTS TRUST COMPANY (IN RE CLAIM OF BOODY, McLELLAN COMPANY).

GEORGE J. BASSETT, BANK COMMISSIONER, *vs.* THE MERCHANTS TRUST COMPANY (IN RE CLAIM OF KATHERINE T. AND ROSE M. HUTCHINSON).

GEORGE J. BASSETT, BANK COMMISSIONER, *vs.* WEST HAVEN BANK AND TRUST COMPANY (THE NEW HAVEN N. B. A., RECEIVER).

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 3d and 4th—decided June 26th, 1934.

George H. Lynch, with whom was Albert W. Hummell, for the appellant (claimant).

Francis T. Reeves, for the appellee (receiver).

*Terrence F. Carmody* and *Maurice T. Healey, Jr.,* for the appellant (claimant).

*Francis T. Reeves,* for the appellee (receiver).

*George E. Beers* and *Elias B. Leiby* of New Jersey, with whom was *William L. Beers,* for the appellant (claimant).

*George D. Watrous,* for the appellee (receiver).

*H. Roger Jones,* Assistant Attorney-General, for the plaintiff.

MALTBIE, C. J.   The issues presented in these three cases are so similar that they can best be discussed together.   Each raises the question whether the particular claimant is entitled to have the claim presented against the receiver allowed as one for a deposit under the provisions of § 3935 of the General Statutes, providing the order in which the funds of a bank or trust company in receivership shall be distributed.   In each case the claimant was a depositor in the defendant bank.   In one case, the defendant bank issued its draft payable to the agent of claimant, upon an order for the withdrawal of a portion of a deposit in its savings department; in one, the defendant bank, on request of the claimant, issued to it a check for a portion of a deposit the claimant had in the bank; in the third, the claimant drew its own check upon its deposit in the defendant bank; and in each, due to the closing of the defendant bank, the claimant never actu-

ally received payment of the amount represented by the draft or check.

These cases differ essentially from *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 1, 12, 160 Atl. 60, where the claimant, a Federal Reserve Bank, sought to secure priority as regards certain checks forwarded to the defendant bank for collection over deposits as well as over other liabilities. They also differ from *Bassett* v. *West Haven Bank & Trust Co.,* 116 Conn. 609, 165 Atl. 895. There the claimant, a Federal Reserve Bank, based its claim upon checks drawn upon the defendant bank by depositors in it payable to third parties, who in turn deposited them in other banks, and they came in this way to the Federal Reserve Bank, which forwarded them to the defendant bank. Supreme Court Records and Briefs, Vol. A-37, p. 161. The gist of the decision in that case is contained in these words (p. 614): "When the deposit account of a maker of a check collected by the defendant for the Reserve Bank was charged with the amount thereof, the maker paid the check, his deposit was reduced by the amount of it, and the proceeds, clearly, became no longer a part of his deposit." The principle is well stated in a note, 52 A. L. R. 995, as follows: "It is a general rule, well supported by authority, that if the payee of a check, or his agent, accepts from the drawee bank something else in place of cash, as a draft on another bank, or a deposit slip or credit, when the drawee holds funds of the drawer sufficient to pay the check, and would pay it in cash if demand therefor were made, the transaction will be regarded as a payment of the check, and the drawer discharged." In the cases now before us, the claimant in each instance was a depositor, seeking to secure funds for his own use, and the ultimate question is whether, by reason of the facts involved in the particular situation, the claimant had ceased to be a

depositor within the meaning of the statute and had become a general creditor of the bank.

In the case of the claim of Katherine T. Hutchinson against the Merchants Trust Company, certain material paragraphs of the finding are questioned by the claimant. The case was submitted to the trial court in a somewhat unusual way. The claimant presented a statement of facts, and offered the testimony of a witness that, to the best of his knowledge and belief, the statements were true. Counsel for other parties were then given an opportunity to question any particular allegation in the statement and all admitted them to be true, except that the receiver questioned one paragraph. Testimony was offered as to the question raised in regard to it. The finding, however, does not accord with the statement of facts in several respects as to which that statement was not questioned and finds other facts not included in it or referred to in the oral testimony heard; but the differences between the two are immaterial, as far as concerns the facts decisive of the claim before us, except as to the issues presented by the paragraph of the statement questioned by the receiver, and one other matter which will be discussed later.

On December 21st, 1931, there was a deposit in the savings department of the defendant bank in the names of Katherine T. Hutchinson and Rose M. Hutchinson, payable to either and amounting to $15,165.17. Katherine T. Hutchinson decided to transfer $15,100 from this account to the Colonial Trust Company of Waterbury. For that purpose she gave to her son and agent, T. Gordon Hutchinson, an order on the bank to pay that amount to him and also delivered to him her pass book. On the same day he presented the order, with the pass book for the account, to the bank, the bank entered upon the book

a debit or withdrawal of the sum of $15,100 and returned the book to him; it entered a similar withdrawal upon its own records; and it issued to him a treasurer's check for $15,100, payable to his order. On the same day he indorsed the check and delivered it to the Colonial Trust Company of Waterbury for deposit and it was thereupon credited upon a commercial deposit which Katherine T. Hutchinson had in that bank. The Colonial Trust Company, under an agreement among certain banks in Waterbury, including the Merchants Trust Company, was at the time serving them in the capacity of a clearing house under an agreement by which the various banks acted in that capacity in rotation. On December 22d, 1931, exchanges of checks and clearings were made, as the result of which there was a balance due from the defendant to the Colonial Trust Company of $17,609.95, and the Colonial Trust Company forwarded to the defendant the checks drawn on it, including the check deposited with it by Hutchinson, requesting payment of the balance due from the defendant. On receipt of the checks and letter, the defendant executed and delivered to the Colonial Trust Company its check for $17,609.95 payable to its order and drawn on the National City Bank of New York and the defendant charged the checks drawn upon it against the accounts upon its books and marked the check involved in this controversy as paid. The Colonial Trust Company on December 22d, 1931, indorsed the check received by it from the defendant for deposit and forwarded it to the Chase National Bank of New York, where it had an account, and the next day the Chase National Bank received it and deposited it to the credit of the Colonial Trust Company. The Chase National Bank the same day presented the check for payment to the National City Bank but the latter refused payment because the

defendant had been closed and returned the check to the Chase National Bank "Unpaid." The Chase National Bank thereupon debited the account of the Colonial Trust Company with the amount of the check and returned it to that company, which has since held it. In fact on December 23d the bank commissioner had issued an order under the statute restraining the defendant bank from paying out funds or receiving deposits and thereafter the present action was brought, a receiver appointed, and the bank is still in receivership.

In *Alexiou* v. *Bridgeport-Peoples' Savings Bank,* 110 Conn. 397, 148 Atl. 374, the facts were these: Katherine M. Alexiou had a deposit in the defendant savings bank amounting to $4200; the bank issued to her five checks drawn on a New York bank and payable to her, in the aggregate equaling the amount of her deposit; these checks were never cashed or deposited by her; subsequently the bank was garnisheed in an action in which Stelios Alexiou was plaintiff and Katherine M. Alexiou was defendant, the plaintiff recovered judgment for $5000 and, the bank as trustee and debtor of Katherine M. Alexiou refusing to pay to him the amount of $4200 representing her deposit, the plaintiff brought a writ of *scire facias* against the bank. We sustained the decision of the trial court that, despite the issuance of the checks, the bank still continued to be indebted to Katherine M. Alexiou to the amount of her deposit in it and was liable under the writ. Our decision largely rested (p. 402) upon the familiar principle that where a check or draft is given by a debtor to a creditor and no special agreement to the contrary is shown, the debt is not discharged until the check or draft is honored or paid. That rule is one of presumed intent and Daniel gives two reasons for it: "It is," he says, "a general principle of law

that one simple executory contract does not extinguish another for which it is substituted, and negotiable securities form no exception;" and again, the rule "proceeds upon the obvious ground that nothing can be justly considered as payment in fact but that which is in truth such, unless something else is agreed to be received in its place; and that a mere promise to pay ought not to be regarded as an effective payment." 2 Daniel, Negotiable Instruments (1st Ed.) § 1260; see *Platt* v. *Foote*, 9 N. Y. 463, 466. The decision in the *Alexiou* case does not reach the question now before us; all that was there decided was that the bank continued indebted to Katherine M. Alexiou despite the issuance of the checks; and we had no occasion to determine the question whether in such a situation the status of depositor remains unaffected or, after a check is issued, it is changed to that of general creditor, which is the question with which we are now confronted. But the reason underlying the *Alexiou* decision does apply in the situation before us. In the absence of something to show a contrary intent, when a bank issues to a depositor a check or draft drawn by it and payable to him for the whole or a portion of his deposit, the presumption must be, in the absence of something to indicate the contrary, at least so long as the depositor continues to hold the check, that the parties did not intend to change the relationship theretofore existing between them until the check or draft is paid or honored. *Walker* v. *Sellers*, 201 Ala. 189, 77 So. 715; *Leach* v. *Citizens State Bank*, 202 Iowa, 879, 211 N. W. 526.

It is true that in the course of the decision, we said (p. 401), with reference to the question whether the acceptance of the checks given for the deposit were to be regarded as in discharge of it by the agreement of the parties: "Such an agreement, if established,

would have discharged the liability of the bank as a depositary, and its obligation would have thenceforth been solely that of drawer of the checks. In the absence of exceptional circumstances, such an agreement would be indicated where it was shown that, by the understanding of both parties, the account was closed and the deposit book balanced, or where the amount paid by check was charged to the depositor on his pass book and on the books of the bank at the time of such payment." That statement was not necessary to the decision of the case, and because, if correct, it is decisive of the claim now before us, we have reconsidered it.

When a check or draft is given by a debtor to his creditor and accepted by the latter, the presumption is that it was intended by the parties as no more than a conditional payment. *Thomas* v. *Supervisors of Westchester County,* 115 N. Y. 47, 53, 21 N. E. 674; *Inter-state National Bank* v. *Ringo,* 72 Kan. 116, 122, 83 Pac. 119; 3 Daniel, Negotiable Instruments (7th Ed.) § 1448. Ordinarily the parties act, and the great volume of trade proceeds, upon the assumption that the condition will in due course be fulfilled. Thus the merchant who sells goods and receives a check therefor often credits the amount upon his books and perhaps issues a receipt purporting to show that the charge for them has been paid; or the holder of a note upon receipt of a check or draft offered in payment of it may surrender the note; but these and like facts in themselves will not destroy the presumption that only conditional payment has been made. They are the results of the assumption that the check or draft will ultimately be paid, rather than evidence of its acceptance in absolute payment. *Bradford* v. *Fox,* 38 N. Y. 289, 290; *Weddigen* v. *Boston Elastic Fabric Co.,* 100 Mass. 422; *Inter-state National Bank* v. *Ringo, supra;*

*McFadden* v. *Follrath,* 114 Minn. 85, 130 N. W. 542; *Cheltenham Stone & Gravel Co.* v. *Gates Iron Co.,* 124 Ill. 623, 627, 16 N. E. 923; 3 Daniel, Negotiable Instruments (7th Ed.) § 1458; 21 R. C. L. p. 64. Of even less effect in establishing absolute payment are acts of a bank to which the person to whom payment is to be made is not a party or which are not known to him, such as entries upon its books or the stamping of a check or draft received by it as paid. *Turner* v. *Bank of Fox Lake,* 3 Keyes (N. Y.) 425; *Burkhalter* v. *Second National Bank,* 42 N. Y. 538; *Inter-state National Bank* v. *Ringo, supra; Graham* v. *Proctorville Warehouse,* 189 N. C. 533, 536, 127 S. E. 540. In the absence of something more than such acts as these, the status of a depositor in a bank is not changed to that of a general creditor. *Sokoloff* v. *National City Bank,* 250 N. Y. 69, 76, 164 N. E. 745; *Aachen & Munich Fire Ins. Co.* v. *Guaranty Trust Co.,* 39 Fed. (2d) 578. So where a depositor in a savings bank, seeking to withdraw the whole or a part of his account, presents his pass book, and upon receiving a check or draft for the amount to be withdrawn, entries are made upon the pass book and the books of the bank, charging his account with the amount of the check or draft, these acts must be construed, not as in themselves evidencing receipt of the check or draft by the depositor in payment of his claim upon the bank, but as the natural result of the assumption that the check or draft will ultimately be paid and so his claim satisfied. We can only regard the *obiter* statement we have quoted from the *Alexiou* decision as not well grounded.

In the case before us, the statement of facts to which the receiver did not agree, and in regard to which testimony was offered, was to the effect that the treasurer's check was not accepted by Hutchinson as payment, but only as a means of obtaining payment

of the amount he desired to withdraw. The trial court has found, instead, that the check was accepted by him as payment of the amount to be withdrawn. As we have pointed out, the real question here is: Did the acceptance of the check under the circumstances present terminate, as far as its amount was concerned, the status of Katherine T. Hutchinson as a depositor; and we understand the purport of the finding to be that it did. No facts other than those we have recited are found from which any inference of intent on the part of Hutchinson in accepting the check can be determined. We must assume that the decision of the trial court was based upon the statement we have quoted from the *Alexiou* decision and in view of the conclusion to which we have now come we can only hold that its conclusion was erroneous.

One paragraph of the statement of facts offered at the trial of the case states that on December 24th, 1931, and for a long time prior thereto, it was the established custom, course of dealing and general usage of all or a majority of the banks in Waterbury, unless otherwise agreed with the depositor therein, to accept for deposit for collection only, checks drawn on other banks, and to credit the amount of such checks to the deposit accounts of such depositors and thereafter debit such accounts with the amount of such checks which were subsequently dishonored. The finding of the trial court goes beyond this statement but there is no evidence in the record to support the additional findings it contains and we must accept as the facts of the case those contained in the statement. It is true that it does not expressly appear that the custom referred to was followed by the Colonial Trust Company, but this seems a fair purport of the statement and is the basis upon which the case is presented to us. The facts which we can consider fall short of present-

ing a situation where the claimant had an immediate right to draw against the amount represented by the check deposited, and we must regard the deposit as one made for collection only, and the Colonial Trust Company as the agent of the claimant to collect it. *Bassett* v. *Mechanics Bank,* 117 Conn. 407, 411, 168 Atl. 12. The record before us, therefore, does not present a situation where by the subsequent course of dealing with the check the claimant or her son can be found to have treated it as received in payment of the amount represented by it. Nor are there other facts in the case sufficient to establish a change of Katherine T. Hutchinson's status from that of a depositor, as regards the amount of the check, to that of a general creditor. Indeed, in such a situation as that here presented there is no sound reason why the claimant should not be given the status of a depositor. Before the defendant issued the check in question, it was holding the money represented by it for the claimant; the check was never paid; nothing done by the parties depleted the assets of the bank available for distribution among its creditors; and the rights of no third parties have intervened. The claimant is entitled to have her claim allowed as one made by a depositor in the defendant bank.

With reference to the claim of Boody, McLellan Company against the Merchants Trust Company, we find some uncertainty upon the record as to the way in which the case was determined in the trial court. It is stated in the finding that claims against the defendant presented to the receiver were referred to a state referee for examination of all facts involved in each of them, that the state referee made his report, and thereafter, on motion of the receiver, the court ordered a hearing for the purpose of determining the status of the claim involved in this proceeding, with

particular reference to the question whether the claimant was to be regarded as a depositor or a general creditor. This procedure would upon the face of the record present to the trial court merely the question of law as to the proper conclusion to be drawn from the facts found by the referee. Nevertheless the trial court has made a finding, which, in such a situation, would be of course unnecessary and improper. Our only purpose in referring to the matter is because the finding contains certain statements not found in the report of the referee. In the absence of anything upon the record to show that the trial court heard evidence in regard to the matter, we can consider only such facts as appear in that portion of the report of the referee which is printed in the record and which we must assume is all of the report applicable to this claim, with the addition of such facts as, appearing in the claimant's draft-finding and expressly admitted in the receiver's counter-finding, we may properly regard as facts agreed upon as true.

This claimant had for a number of years maintained a deposit in the commercial department of the defendant bank. Its resident manager at Waterbury deposited to this account money and commercial paper received in course of its business but had no authority to draw against the account. If funds were to be transferred to the claimant at its principal office in New York, the manager would instruct the bank to forward them by treasurer's check or draft. On December 21st, 1931, the manager requested the bank to forward to the claimant $1315.96, and to charge the amount to its account. The next day the bank issued its check for this sum, drawn on a New York bank, payable to the order of the claimant, and charged its amount against the claimant's deposit. On December 23d, 1931, the claimant received this check and imme-

diately presented it for payment to the bank on which it was drawn, but payment was refused because it was reported that the defendant bank was closed. The claimant still holds the check issued to it by the defendant.

There is nothing in these circumstances to indicate that the claimant received the check from this defendant in payment of its indebtedness, or that its status as a depositor had been altered. Certainly, if the actual entry upon the books of the bank and the depositor in the Hutchinson case would not have that effect, the direction of the bank to charge the amount of the check to the claimant's account would not. For the reasons we have given in discussing the Hutchinson case, Boody, McLellan Company was entitled to have its claim for the amount represented by the check allowed as one for a deposit.

With regard to the claim of the American Agricultural Chemical Company against the West Haven Bank and Trust Company, the facts are these: The claimant was a depositor in the defendant bank and on December 23d, 1931, had on deposit with it in its "Branch" and "Home Office" accounts deposits amounting to more than $8000. Before that day it had drawn a check for $3000 upon the Home Bank and Trust Company, which had previously merged with the defendant bank, to the order of the "Guaranty Trust Company of New York Collection Account" and deposited the check with the Trust Company "for deposit only and credit to The American Agricultural Company Collection Account." The check was sent to the Federal Reserve Bank at Boston which indorsed it and forwarded it, with other checks, for collection to the defendant bank. The defendant received it on December 23d, 1931, the amount was charged against the deposit account of the claimant and the check

cancelled. For the amount called for by the check the defendant bank drew its draft on the Chase National Bank, payable to the Federal Reserve Bank of New York, and forwarded it to that bank for the account of the Federal Reserve Bank of Boston. When this draft was presented payment was refused, as the defendant bank had been closed by the bank commissioner. Later a receiver of the defendant bank was appointed and the bank is still in receivership.

The deposit of the check drawn by the claimant on the defendant bank in the Guaranty Trust Company was a deposit for collection and the Trust Company became the agent of the claimant to collect it. *Bassett* v. *Mechanics Bank,* 117 Conn. 407, 411, 168 Atl. 12. That agency continued throughout the various steps taken to secure from the defendant the amount called for by the check; a Federal Reserve Bank in forwarding commercial paper for collection is acting as the agent of the bank from which it receives it and if that bank is itself an agent for the person who presents the paper for collection, the Reserve Bank as to that paper necessarily becomes a subagent of the person originally depositing it. *Federal Reserve Bank* v. *Malloy,* 264 U. S. 160, 168, 44 Sup. Ct. 296; *Hirning* v. *Federal Reserve Bank,* 52 Fed. (2d) 382, 387; *Carson* v. *Federal Reserve Bank,* 254 N. Y. 218, 172 N. E. 475; *Fergus County* v. *Federal Reserve Bank,* 75 Mont. 582, 593, 244 Pac. 883; *Massey-Harris Harvester Co.* v. *Federal Reserve Bank,* 226 Mo. App. 916, 933, 48 S. W. (2d) 158. The relationship of agency between the claimant and the Guaranty Trust Company which sprang into being with the deposit adhered to and characterized the transaction throughout. That being the situation, it is the same as though the claimant had itself presented the check it deposited and had received the draft upon the Chase National Bank.

We are unable to see in the facts involved in this controversy sound reason to distinguish the case from that presented by the claims of Katherine T. Hutchinson and Boody, McLellan Company which we have discussed, and we conclude that the claimant continued in the status of a depositor and is entitled to have its claim allowed as such.

There is error in each of these cases and they are remanded to the trial court to be proceeded with according to law.

In this opinion the other judges concurred.