ROSE KOSSOVER *vs.* WILLIMANTIC TRUST COMPANY.

MALTBIE, C. J., BANKS, AVERY, BROWN and O'SULLIVAN, JS.

Argued October 8th—decided November 6th, 1936.

*Josiah H. Peck* and *Frank H. Foss,* for the defendant (appellant).

*John B. Harvey,* for the plaintiff (appellee).

BROWN, J. The sole question to be determined upon this appeal, is whether the garnishee process served upon the defendant, in the plaintiff's action against Mrs. Helen Klosinski, was effective, as held by the trial court. The finding establishes these undisputed facts pertinent to this issue. June 9th, 1930, Mrs. Helen Klosinski deposited $1800 with the defendant's savings department. June 14th, 1930, she told the defendant's teller she wished to close her account and withdrew her money in the form of a draft. He gave her a draft for $1800 payable to her order and drawn on the Guaranty Trust Company of New York, in return for her signed withdrawal slip acknowledging she was withdrawing this sum which closed the account. The defendant made an entry on the ledger card of her account indicating that the account was closed. June 23d, 1930, garnishee process was duly served on the defendant in the action of the plaintiff against Mrs. Klosinski, and the defendant disclosed that it was not indebted to the latter. Mrs. Klosinski held the draft without indorsing it until June 27th, 1930, when she presented it to the teller of the defendant's commercial department, who knew nothing of the gar-

nishee process served, and he at her request cashed it by payment of $1800 to her. May 12th, 1932, judgment was entered in the plaintiff's favor in her suit against Mrs. Klosinski, for a total of $855.06. June 24th, 1932, demand was made on the defendant on execution and it refused to pay.

The trial court further found that there was no agreement between the defendant and Mrs. Klosinski that the draft should be in discharge of its obligation to her, but that it was their mutual intention that it should be satisfied only when the draft was paid. Upon the subordinate facts recited in the preceding paragraph, apart from any evidence which there may have been supporting it but not available to us in the record, the conclusion of the court was fully warranted. *Bassett* v. *Merchants Trust Co.*, 118 Conn. 586, 594, 173 Atl. 777. The trial court also concluded that when the garnishee process was served on the defendant on June 23d, it was still indebted to Mrs. Klosinski for the amount of the deposit, and therefore gave judgment for the plaintiff for $1063.53, the total amount due on the execution.

In this State the rule that in the absence of special agreement to the contrary, the giving of a draft by a debtor to his creditor does not discharge the debt itself until the draft is paid, it being a means adopted to enable the creditor to obtain payment of the debt and remaining, until honored or paid, but evidence of the indebtedness, is established by a long line of decisions. *Reade* v. *Indemnity Ins. Co.*, 121 Conn. 309, 313, 184 Atl. 646; *Bassett* v. *Merchants Trust Co.*, 118 Conn. 586, 595, 173 Atl. 777; *Alexiou* v. *Bridgeport-Peoples' Savings Bank*, 110 Conn. 397, 402, 148 Atl. 374; *Burritt Co.* v. *Negry*, 81 Conn. 502, 508, 71 Atl. 570; *Cummings* v. *Gleason*, 72 Conn. 587, 589, 45 Atl. 353; *Usher* v. *Waddingham*, 62 Conn. 412, 426, 26 Atl. 538;

*Merrill* v. *Kenyon,* 48 Conn. 314, 320; *Hopkins* v. *Forrester,* 39 Conn. 351, 354; *Fairchild* v. *Holly,* 10 Conn. 474, 477; *Bill* v. *Porter,* 9 Conn. 23, 30; *Davidson* v. *Bridgeport,* 8 Conn. 472, 476. It was by the application of this principle to its determination of the fact of no special agreement here that the draft was payment to Mrs. Klosinski, that the trial court arrived at its conclusion.

The defendant does not question that this principle is established by the authorities cited; but does contend that in interpreting the application of § 5763 of the General Statutes, under which this garnishee process was had, it should not be applied so as to impose double liability upon it as garnishee, on process not served until after it had issued to Mrs. Klosinski's order as payee this draft with its inherent attributes peculiar to negotiable paper. It accordingly urges as a basis of decision herein the adoption of this rule to meet this situation: "A check is always so far payment until dishonored, that, after its delivery, the drawer cannot be garnisheed as debtor of the payee in respect to the debt for which the check is given." 2 Morse, Banks & Banking (6th Ed.) § 543. A number of decisions are cited on the defendant's brief in support of this proposition. While certain of them fail to sustain it, containing as they do an express finding that the check in question was given and accepted in payment, thus terminating the indebtedness, and at least one because the garnishment statute under consideration expressly excepted debts evidenced by such an instrument, the others do adopt and apply this rule. Our further search has satisfied us that this rule is supported by considerable authority, and its practical value as a working rule of certainty is quite apparent.

We have not adopted this rule, but on the contrary

have held that a debt, for which a check or draft is outstanding, is subject to garnishment under our garnishment statute above cited. *Alexiou* v. *Bridgeport-Peoples' Savings Bank* and *Reade* v. *Indemnity Ins. Co.*, already cited. This does not mean, however, that under our law there are no safeguards against double liability where a debt evidenced by a draft outstanding has been garnisheed. The draft in question in this case was a check within the terms of the negotiable instruments law. 7 Zollman, Banks & Banking, § 4721. It was therefore a negotiable instrument (General Statutes, § 4318), subject to the provisions of this law (§ 4502), and unless presented for payment within a reasonable time after its issue, the drawer is discharged from liability thereon to the extent of the loss caused by the delay. § 4503. And by an early decision of this court, it was established that: "A debt due upon a negotiable promissory note, is as much liable to attachment as any other debt, with this qualification, that when the note is negotiated before it comes due, it will defeat the attachment," citing *Enos* v. *Tuttle*, 3 Conn. 27, 29; *Culver* v. *Parish*, 21 Conn. 407, 412; and we stated the reason for the rule in these words: "This qualification is allowed, for the purpose of giving effect to the law making such instruments negotiable, that indorsees may take them, before they become payable, without enquiring whether any liens have been created upon them, while in the possession of previous holders. But where they take them after they become payable, their situation is different; and it is for them to enquire, whether they still remain valid securities." See also 2 Daniel, Negotiable Instruments (7th Ed.) § 930; Drake, Attachments (5th Ed.) 589; 4 American Jurisprudence, p. 728, § 267; *McCormick* v. *Warren*, 74 Conn. 234, 239, 50 Atl. 740. As clearly appears from

the statement of the reason for the rule, it applies to the draft here in question, which was a negotiable instrument.

Therefore, while it may be that the rule for which the defendant contends would afford a somewhat simpler and more convenient working regulation from the point of view of the drawer bank, it is apparent that our law as long established affords it fairly ample means of protection. By making no disclosure at the time served, and resorting to reasonable diligence thereafter to ascertain the facts as to the draft issued, our statutes furnish it practical means of safeguarding itself in most cases. General Statutes, §§ 5768, 5814. Should it prefer to avoid doing this as one of the duties incident to its business, it could, by entering into an express agreement with the payee when the draft is issued, provide that it is accepted in actual payment and discharge of the debt.

The difficulty of the defendant bank in the present case is not due to a lack of the opportunity under our law to protect itself from double liability, but to its failure to exercise reasonable care in the conduct of its business. It is a legal corporation, a single legal entity. The fact that under its charter it conducted both a savings and commercial department did not divide it into two separate institutions. *Lippitt* v. *Thames Loan & Trust Co.,* 88 Conn. 185, 197, 90 Atl. 369; *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 1, 8, 160 Atl. 60. The service of the garnishee process upon it in the manner prescribed by law, charged it with full knowledge thereof. Therefore, that subsequently one of its employees who had no actual knowledge of the process served, cashed the draft for Mrs. Klosinski who had not negotiated it, could not constitute it a holder in due course. General Statutes,

§§ 4373, 4369.   It is therefore entitled to none of the rights and equities incident to such a status.

There is no error.

In this opinion the other judges concurred.