### HOSPITAL OF ST. RAPHAEL *v.* NEW HAVEN SAVINGS BANK
### (13169)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued November 10—decision released December 29, 1987

*Penny Q. Seaman,* for the appellant (defendant).

*Sidney Gimple,* for the appellee (plaintiff).

*John A. Cvarch* filed a brief for the Savings Banks' Association of Connecticut as amicus curiae.

PETERS, C. J. The sole issue in this case is whether a creditor may garnish, as a debt owed to the underlying debtor, the proceeds of bank accounts for which,

prior to the garnishment, the debtor had received teller's checks made payable to the order of a third person. The plaintiff, the Hospital of Saint Raphael, brought a civil action against Isabel Gonzales, in conjunction with which it obtained a prejudgment order of garnishment. The garnishee, the New Haven Savings Bank, was duly served in accordance with the provisions of General Statutes § 52-329.[1] After obtaining a judgment against Gonzales in the amount of $28,409.24, the plaintiff demanded payment from the defendant. When the defendant refused to pay, the plaintiff brought this action of scire facias pursuant to General Statutes § 52-381.[2] The plaintiff then filed a

---

[1] "[General Statutes] Sec. 52-329. PROCESS OF FOREIGN ATTACHMENT. When the effects of the defendant in any civil action in which a judgment or decree for the payment of money may be rendered are concealed in the hands of his agent or trustee so that they cannot be found or attached, or when a debt is due from any person to such defendant, or when any debt, legacy or distributive share is or may become due to such defendant from the estate of any deceased person or insolvent debtor, the plaintiff may insert in his writ, subject to the provisions of sections 52-278a to 52-278g, inclusive, a direction to the officer to leave a true and attested copy thereof and of the accompanying complaint, at least twelve days before the return day, with such agent, trustee or debtor of the defendant, or, as the case may be, with the executor, administrator or trustee of such estate, or at the usual place of abode of such garnishee; and from the time of leaving such copy all the effects of the defendant in the hands of any such garnishee, and any debt due from any such garnishee to the defendant, and any debt, legacy or distributive share, due or that may become due to him from such executor, administrator or trustee in insolvency, not exempt from execution, shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover."

[2] "[General Statutes] Sec. 52-381. LIABILITY OF GARNISHEE; SCIRE FACIAS. If judgment is rendered in favor of the plaintiff in any action by foreign attachment, all the effects in the hands of the garnishee at the time of the attachment, or debts then due from him to the defendant, and any debt, legacy or distributive share, due or to become due the defendant from any garnishee as an executor, administrator or trustee, shall be liable for the payment of such judgment. The plaintiff, on praying out an execution, may direct the officer serving the same to make demand of such garnishee for the effects of the defendant in his hands, and for the payment of any debt due the defendant, and such garnishee shall pay such debt or produce such effects, to be taken and applied on such execution. If he has in any manner

motion for summary judgment, which the trial court granted. The defendant appeals from this judgment. We find error.

The underlying facts are undisputed. Isabel Gonzales had two accounts with the defendant bank, a passbook savings account and a certificate of deposit. On September 2, 1981, Gonzales closed these accounts and received in exchange two teller's checks drawn by the defendant on the Union Trust Company. These checks, one for $21,000 and one for $10,000, were made payable to the order of Isabel Rodriquez.

The following day, September 3, 1981, notice of garnishment was served on the defendant. The garnishment directed the sheriff to attach, to the value of $30,000, the goods or estate of Isabel Gonzales, a/k/a Isabel Gonzalez, a/k/a Maria Gonzales, a/k/a Maria Gonzalez. The writ made no mention of anyone named Rodriquez. The checks were subsequently deposited for

disposed of the effects of the principal in his hands when the copy of the writ was left with him, or does not expose and subject them to be taken on the execution, or does not pay to the officer when demanded the debt due the defendant at the time the copy of the writ was left with him, such garnishee shall be liable to satisfy such judgment out of his own estate, as his proper debt, if the effects or debt is of sufficient value or amount; if not, then to the value of such effects or to the amount of such debt. A scire facias may be taken out from the clerk of the court where the judgment was rendered, to be served upon such garnishee, requiring him to appear before such court and show cause, if any, to the contrary; and the plaintiff may require the defendant, and the defendant shall have the right, to disclose on oath whether he has any of the effects of the debtor in his hands, or is indebted to him; and the parties may introduce any other proper testimony respecting such facts. If it is found that the defendant has the effects of such debtor in his hands or is indebted to him, or if he makes default of appearance or refuses to disclose on oath, judgment shall be rendered against him, as for his own debt, to be paid out of his own estate with costs; but, if it appears on the trial that the effects are of less value or the debt of less amount than the judgment recovered against the debtor, judgment shall be rendered to the value of the goods or to the amount of the debt; and, if it appears that the defendant has no effects of such debtor in his hands or is not indebted to him, he shall recover costs."

payment in a bank in Puerto Rico and were thereafter presented to and paid by the Union Trust Company.

After the action against Gonzales had been reduced to judgment in 1986, the plaintiff filed its complaint in scire facias, alleging that the defendant was obligated to pay because, at the time it was given notice of the writ of garnishment, it was indebted to Isabel Gonzales.[3] The complaint contained no allegation concerning Rodriquez.

The plaintiff thereafter filed a motion for summary judgment. In its affidavit in support of this motion, the plaintiff for the first time included a "contention that . . . Isabel Rodriquez and Isabel Gonzales . . . are one and the same person." This contention was based upon a reference to Gonzales' driver's license which was used for the purpose of identification when the teller's checks were deposited for payment in Puerto Rico. The defendant's counter affidavit denied that it knew or should have known, at the time of the garnishment, that Gonzales and Rodriquez were the same person. The defendant's affidavit noted that it would not have seen any endorsement on the teller's checks until after the checks had been paid by the drawee bank.

The trial court granted the plaintiff's motion for summary judgment without making a finding concerning the identity of Rodriquez. Even if the teller's checks

---

[3] Under our law of garnishment as it existed until the 1983 enactment of the Postjudgment Remedies Act, General Statutes § 52-350a et seq., the customary procedure for adjudication of a disputed garnishment was either a writ of scire facias under General Statutes § 52-381; see *Clime* v. *Gregor,* 145 Conn. 74, 76, 138 A.2d 794 (1958); or an action for a declaratory judgment under General Satutes § 52-235a. Practice Book § 394. In *William M. Raveis & Associates, Inc.* v. *Kimball,* 186 Conn. 329, 335–36, 441 A.2d 200 (1982), we held that a garnishee cannot challenge the validity of a prejudgment remedy except by recourse to these plenary statutory procedures. Under the new act, disputes about the validity of a garnishment may be adjudicated in a hearing in supplemental proceedings that are ancillary to the underlying action. See General Statutes § 52-356c.

had been issued to a stranger, the court concluded, the defendant had failed to take the proper action with respect to the garnishment of the debt. The court determined that, under our case law, the proceeds of the debt owed to Gonzales were still deemed to be "in the hands of [the] garnishee" despite the issuance of the teller's checks in satisfaction of the debt. The court concluded that because, at the time of the garnishment, the defendant could still have stopped payment on the checks, its debt to Gonzales had not yet been discharged and, consequently, it was liable to the plaintiff in this action.

A writ of garnishment subjects to the claims of a creditor only a debt which, at the time of the garnishment, was due to the underlying debtor. *Dorr-Oliver, Inc.* v. *Willett Associates,* 153 Conn. 588, 595, 219 A.2d 718 (1966); *Seigel* v. *Heimovitch,* 128 Conn. 543, 544, 24 A.2d 481 (1942). The question before us is therefore whether, on the facts of this case, the defendant was indebted to Gonzales on September 3, 1981. In light of the governing provisions of the Uniform Commercial Code,[4] we agree with the defendant that its obligations on the savings accounts had then been discharged, and its obligations on the teller's checks payable to Rodriquez did not constitute a debt owing to Gonzales. In the absence of a continuing outstanding debt to Gonzales, the defendant was not answerable to the plaintiff for its judgment against Gonzales. The trial court's judgment to the contrary was in error.

The first issue that we must address is the validity of the plaintiff's claim that Gonzales continued to have an interest in her bank accounts despite the defendant's issuance of the two teller's checks. The plaintiff cites a number of cases that rely on the common law

[4] In fairness to the trial court, we note that the defendant's trial memorandum in opposition to the motion for summary judgment did not contain any references to the applicable provisions of the Uniform Commercial Code.

presumption that checks are ordinarily taken as conditional rather than as absolute payment, and their acceptance, until they are finally paid, does not discharge the obligation that they replace. *Tuckel* v. *Jurovaty,* 141 Conn. 649, 651, 109 A.2d 262 (1954); *Sperandeo* v. *Aetna Casualty & Surety Co.,* 131 Conn. 407, 410–11, 40 A.2d 280 (1944); *Second National Bank of New Haven* v. *Harris,* 122 Conn. 180, 184–85, 187 A. 910 (1936); *Kossover* v. *Willimantic Trust Co.,* 122 Conn. 166, 168, 187 A. 907 (1936); *Bassett* v. *Merchants Trust Co.,* 118 Conn. 586, 595, 173 A. 777 (1934); *Alexiou* v. *Bridgeport People's Savings Bank,* 110 Conn. 397, 402, 148 A. 374 (1930); *Huybrechts* v. *Huybrechts,* 4 Conn. App. 319, 321, 494 A.2d 593 (1985).

These cases are distinguishable both as a matter of fact and as a matter of law. As a matter of fact, most of them involve negotiable instruments that are personal obligations, rather than obligations on which a bank engages its own credit, as it does when it issues a teller's check. The two cases that involve teller's checks, *Kossover* v. *Willimantic Trust Co.* and *Alexiou* v. *Bridgeport People's Savings Bank,* deal with teller's checks made payable to the person to whom the bank had been indebted. The plaintiff has cited no Connecticut case, and we have found none, that deems a payment to be merely conditional when the underlying obligation of a bank is exchanged for teller's checks made payable to the order of a third person.

More important, however, the law governing negotiable instruments has changed with the adoption in Connecticut of the Uniform Commercial Code; General Statutes § 42a-1-101 et seq.; especially articles 3 and 4. Two Code provisions are of particular relevance. One is General Statutes § 42a-4-303 (1), which states: "Any . . . legal process served upon . . . a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty

to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if the . . . legal process is received or served . . . after the bank has . . . (d) completed the process of posting the item to the indicated account of the . . . person to be charged therewith or otherwise has evidenced by examination of such indicated account and by action its decision to pay the item . . . . '' The other is General Statutes § 42a-3-802 (1), which states: "Unless otherwise agreed where an instrument is taken for an underlying obligation (a) the obligation is pro tanto discharged if a bank is drawer . . . and there is no recourse on the instrument against the underlying obligor . . . . ''

In combination, these provisions demonstrate that the plaintiff's garnishment came too late with respect to any alleged claim to the Gonzales savings accounts. The rule contained in § 42a-4-303 (1) applies literally to Gonzales' certificate of deposit. Such a certificate is an "instrument" under General Statutes § 42a-3-104 (2) (c) and therefore an "item" under General Statutes § 42a-4-104 (1) (g). The defendant "evidenced . . . its decision to pay [this] item" by having Gonzales sign a savings withdrawal slip and and by issuing a teller's check in the stipulated amount. By operation of § 42a-3-802, the tender and taking of a teller's check, on which the defendant bank was a drawer, presumptively discharged its obligation on the certificate of deposit. By analogy, the same principles govern the closing out of the Gonzales passbook savings account. That account too was finally settled by having Gonzales execute a savings withdrawal slip and having the defendant assume a direct obligation on its teller's check. We have often applied Code provisions to commercial transactions that were analogous to those expressly covered by the terms of the Code. *New England Yacht Sales, Inc.* v. *Commissioner,* 198 Conn.

624, 630, 504 A.2d 506 (1986); *Olean* v. *Treglia,* 190 Conn. 756, 762, 463 A.2d 242 (1983); *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 225, 455 A.2d 857 (1983); *Hamm* v. *Taylor,* 180 Conn. 491, 494–95, 429 A.2d 946 (1980). For both the certificate of deposit and the passbook account, Gonzales and the bank executed an exchange of savings account indebtedness for indebtedness defined by the terms of the teller's checks. In the absence of evidence of an agreement to the contrary, that exchange, which antedated the writ of garnishment, discharged the defendant from its former indebtedness to Gonzales on the savings accounts. E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970) § 69 (b), p. 291.

There remains, however, a second issue. Even if the garnishment came too late to reach the Gonzales savings accounts directly, could it attach instead to the teller's checks that Gonzales purchased with the proceeds of these accounts? The teller's checks were still outstanding, unpaid, at the time of the garnishment. The plaintiff maintains that the garnishment was valid because the defendant could then have protected itself from further liability on the teller's checks by ordering their payment to be stopped, the defendant having made no claim that it did not have a reasonable time to stop payment. We disagree.

At the outset, it is important to note that the defendant, as issuer of the teller's checks, incurred direct liability for their payment. As in the case of a certified check or a cashier's check, a teller's check engages the bank's own credit and is therefore more of a substitute for cash than is an ordinary personal check.[5] Although the defendant, as the "customer" for whose

[5] "A bank can incur direct liability to the payee of its customer's check in a variety of ways. First, it can certify the customer's check. Second, it can issue a cashier's check (that is, a check on which it is both the drawer and the drawee). Third, it can issue a bank check (that is, a check on which it is the drawer and the drawee is a second bank). In all three cases the

account the checks were payable, could itself have asked its drawee, the Union Trust Company, to stop payment on the teller's checks; see General Statutes § 42a-4-403 (1);[6] such a request, if honored, would have left the defendant, as drawer, liable for breach of its engagement as drawer. General Statutes § 42a-3-413.[7] As a drawer, once the instruments had been dishonored, the defendant would have been liable not only to the named payee but to any future holder in due course, such as a depositary bank that cashed the checks. See General Statutes §§ 42a-3-305,[8] 42a-4-208[9]

bank incurs direct liability to the payee, either as an acceptor on the check or as a drawer." J. White & R. Summers, Uniform Commercial Code (2d Ed. 1980) § 17–5, p. 681. A teller's check is another name for a bank check.

[6] "[General Statutes] Sec. 42a-4-403. CUSTOMER'S RIGHT TO STOP PAYMENT; BURDEN OF PROOF OF LOSS. (1) A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in section 42a-4-303."

[7] "[General Statutes] Sec. 42a-3-413. CONTRACT OF MAKER, DRAWER AND ACCEPTOR. (1) The maker or acceptor engages that he will pay the instrument acording to its tenor at the time of his engagement or as completed pursuant to section 42a-3-115 on incomplete instruments.

"(2) The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder or to any endorser who takes it up. The drawer may disclaim this liability by drawing without recourse.

"(3) By making, drawing or accepting the party admits as against all subsequent parties including the drawee the existence of the payee and his then capacity to endorse."

[8] "[General Statutes] Sec. 42a-3-305. RIGHTS OF A HOLDER IN DUE COURSE. To the extent that a holder is a holder in due course he takes the instrument free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt except (a) infancy, to the extent that it is a defense to a simple contract; and (b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and (c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and (d) discharge in insolvency proceedings; and (e) any other discharge of which the holder has notice when he takes the instrument."

[9] "[General Statutes] Sec. 42a–4–208. SECURITY INTEREST OF COLLECTING BANK IN ITEMS, ACCOMPANYING DOCUMENTS AND PROCEEDS. (1) A bank

and 42a-4-209.[10] The defendant would also have been liable to other holders who might not qualify as holders in due course, because the claims of third persons are ordinarily "not . . . available as a defense to any party liable thereon unless the third party himself defends the action for such party." General Statutes § 42a-3-306 (d).

For these reasons, a purchaser of bank paper does not have a right to insist that an issuing bank order that payment be stopped on a teller's check that is not made payable to the purchaser. See *Fur Funtastic, Ltd.* v. *Kearns,* 120 Misc. 2d 794, 795, 467 N.Y.S.2d 499 (1983); J. Brady, Bank Checks (5th Ed. H. Bailey, 1979) § 20.12, p. 20–30, and § 20.13; J. White & R. Summers,

has a security interest in an item and any accompanying documents or the proceeds of either (a) in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied; (b) in case of an item for which it has given credit available for withdrawal as of right, to the extent of the credit given whether or not the credit is drawn upon and whether or not there is a right of charge-back; or (c) if it makes an advance on or against the item.

"(2) When credit which has been given for several items received at one time or pursuant to a single agreement is withdrawn or applied in part the security interest remains upon all the items, any accompanying documents or the proceeds of either. For the purpose of this section, credits first given are first withdrawn.

"(3) Receipt by a collecting bank of a final settlement for an item is a realization on its security interest in the item, accompanying documents and proceeds. To the extent and so long as the bank does not receive final settlement for the item or given up possession of the item or accompanying documents for purposes other than collection, the security interest continues and is subject to the provisions of article 9 except that (a) no security agreement is necessary to make the security interest enforceable; and (b) no filing is required to perfect the security interest; and (c) the security interest has priority over conflicting perfected security interests in the item, accompanying documents or proceeds."

[10] "[General Statutes] Sec. 42a-4-209. WHEN BANK GIVES VALUE FOR PURPOSES OF HOLDER IN DUE COURSE. For purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item provided that the bank otherwise complies with the requirements of section 42a-3-302 on what constitutes a holder in due course."

Uniform Commercial Code (2d Ed. 1980) § 17–5, p. 681. For similar holdings in cases involving cashier's checks, see, e.g., *Louis Falcigno Enterprises, Inc.* v. *Massachusetts Bank & Trust Co.,* 14 Mass. App. 92, 94–96, 436 N.E.2d 993 (1982), *Santos* v. *First National Bank of New Jersey,* 186 N.J. Super. 52, 66–67, 451 A.2d 401 (1982), and *Dziurak* v. *Chase Manhattan Bank,* 44 N.Y.2d 776, 777, 377 N.E.2d 474, 406 N.Y.S.2d 30 (1978).[11]

Applying these principles to the facts presented by this case, we conclude that Gonzales, as the purchaser of teller's checks payable to Rodriquez, could not have compelled the defendant to rescind that transaction through a stop payment order. The defendant could not itself have requested that payment be stopped without exposing itself to liability to Rodriquez or to the bank that ultimately cashed the checks for her.

The rights of the plaintiff as garnisher cannot exceed those of its underlying obligor at the time of the garnishment. The plaintiff cannot assert a facial claim to the teller's checks because they were made payable to the order of Rodriquez and not of Gonzales, and therefore do not directly evidence an obligation owed by the defendant to Gonzales.[12] The plaintiff has no indirect claim to the teller's checks because service of the writ

[11] Our decision is limited to the issue of whether a purchaser of a teller's check may compel the issuer to seek a stop payment order. Whether such an issuer may itself opt to request a stop payment order, either for its own benefit or as an accommodation to its customer, is a different issue that can await another day. See L. Lawrence, "Making Cashier's Checks and Other Bank Checks Cost-Effective: A Plea for Revision of Articles 3 and 4 of the Uniform Commercial Code," 64 Minn. L. Rev. 275 (1980); J. White & R. Summers, Uniform Commercial Code (2d Ed. 1980) § 17–5, p. 681; J. Brady, Bank Checks (5th Ed. H. Bailey, 1979, and 1984 Sup.) §§ 20.11–20.13, citing many of the relevant cases.

[12] Our decision is based on the uncontroverted assertions in the affidavits filed at trial that show that the defendant, at the time of the garnishment, neither knew nor had reason to know that Gonzales and Rodriquez might have been the same person.

of attachment did not compel the defendant to stop payment thereon: owing no such duty to the purchaser of the teller's checks, the defendant had no such duty to the plaintiff. Any other result would expose the defendant to the risk of double liability, to the plaintiff and to holders of the teller's checks.[13] A garnishee cannot be compelled to pay the full amount of the original indebtedness twice. *Parker, Peebles & Knox, Inc.* v. *National Fire Ins. Co.*, 111 Conn. 383, 399, 150 A. 313 (1930).

Whether the plaintiff seeks to assert an interest in the savings accounts that Gonzales once had with the defendant or in the teller's checks that Gonzales purchased upon liquidation of her savings accounts, the plaintiff's effort to enforce its writ of garnishment cannot succeed. Since the defendant was not indebted to Gonzales at the time of the garnishment, the defendant was entitled to judgment in the plaintiff's action in scire facias. The trial court's ruling to the contrary was in error.

There is error, the judgment of the trial court is set aside and the case is remanded with direction that judgment be entered for the defendant.

In this opinion the other justices concurred.

---

[13] For this reason, General Statutes § 42a-3-603 (1) provides: "The liability of any party is discharged to the extent of his payment or satisfaction to the holder even though it is made with knowledge of a claim of another person to the instrument unless prior to such payment or satisfaction the person making the claim either supplies indemnity deemed adequate by the party seeking the discharge or enjoins payment or satisfaction by order of a court of competent jurisdiction in an action in which the adverse claimant and the holder are parties."