CHARLES SEIGEL *vs.* EDWARD HEIMOVITCH ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued January 9th—decided March 9th, 1936.

*Josiah H. Peck* and *Louis H. Katz,* for the appellant (plaintiff).

*Joseph B. Hurwitz,* with whom was *Saul Berman,* for the appellees (defendants).

MALTBIE, C. J. The plaintiff brought this action based upon an indebtedness of the defendant Edward Heimovitch to him and alleging that Heimovitch had made fraudulent conveyances of his property to the other defendants and had fraudulently concealed his assets from his creditors. Beginning about 1902 Heimovitch had owned and conducted a furniture business on Front Street in Hartford, with a branch on Park Street, under the name of Heimovitch Brothers; and at the time the debt was contracted he owned the

buildings in which these businesses were conducted, a home on Greenfield Street, and a half interest in two other large properties in the city, all the real estate being subject to mortgages. His family consisted of his wife, Bessie Heimovitch, and four children; of these Gilbert became of age in 1928 and was then, as he had been for a number of years before, employed by his father in the furniture business, but the other children were minors. His wife had two cousins, Louis Fischer and Sarah Rulnick, and a mother, Dora Unger, all of whom figured in the transactions subsequently narrated.

About May 2d, 1930, Heimovitch caused to be incorporated a corporation known as Heimovitch Brothers, Incorporated, to which he transferred the furniture business, the personal property used in connection with it, all accounts receivable, and the buildings in which it was conducted, the corporation, however, not assuming certain mortgages on the real estate. Fifteen hundred and ninety-eight shares of stock in the corporation were originally issued to Heimovitch, one share to his wife and one share to Gilbert. The stock represented a capitalization of $160,000, which was the stated and actual value of the assets transferred to the corporation. Immediately after its organization, Heimovitch transferred seven hundred and eighteen shares to Gilbert and one hundred and sixty-one shares to his wife, with the result that thereafter he and Gilbert each owned seven hundred and nineteen shares and his wife owned one hundred and sixty-two. The business continued to be conducted as it had been before the organization of the corporation. On January 23d, 1933, an involuntary petition in bankruptcy was filed against it by three small creditors; the corporation was adjudged a bankrupt; and a composition with creditors was offered and

confirmed by which, with the exception of an additional sum paid one creditor to settle a disputed claim, they received fifteen per cent. of the debts owed them in cash and notes for an additional five per cent. Immediately thereafter the corporation conveyed all its assets to Mrs. Heimovitch. Meanwhile mortgages upon the Front Street, Park Street and Greenfield Street properties had been foreclosed. About June, 1933, five corporations were organized, one to take over the Front Street business and property, one to take over the Park Street business, one to take over the Park Street realty, one to take over the Greenfield Street property, and one to run a furniture business in the city known as the Hall-Reid Company. Mrs. Heimovitch transferred her interests in the business conducted on Front and Park Streets to the corporations organized to conduct them and the three pieces of real estate were transferred to the respective corporations. The stock in all of these corporations was issued to and held by Mrs. Heimovitch, her son Richard and Sarah Rulnick. In July, 1933, Fischer purchased a piece of property on Front Street next to that formerly owned by Heimovitch, in pursuance of an oral agreement with Mrs. Heimovitch that he was to do so in her behalf and to hold it subject to her directions, and the business was moved to that location where it has been continued.

In addition to the facts already recited, the trial court has made findings as follows: Just before the organization of the first corporation Heimovitch's assets were much more than sufficient to cover all his liabilities and his transfer of property to the corporation did not render him insolvent. The corporation was organized in fulfilment of a promise to Gilbert, who had made him loans, that he would give him an equal share in the business. Heimovitch paid to the

corporation $4800 in cash and transferred assets which were valued by the directors in the certificate made at the time of the organization at $155,000, the two sums representing the full value of the fifteen hundred and ninety-eight shares issued to him, and Mrs. Heimovitch and Gilbert each paid to the corporation $100 for the one share issued to him or her. Aside from the fulfilment of the promise to Gilbert to give him an equal share in the business, the subsequent transfer of the seven hundred and eighteen shares by Heimovitch to him was upon the consideration of some $12,-000 which had been loaned by Gilbert to Heimovitch and the former's promise to continue to work in the business for five years at a stated salary; and the transfer of the one hundred and sixty-one shares to Mrs. Heimovitch was in consideration of the cancellation of a note for $10,000 made by Heimovitch payable to her mother and which she had inherited. At this time Heimovitch was not indebted in excess of his assets nor did the transfers of stock render him insolvent.

Subsequent to the organization of the corporation the business constantly lost money and its final insolvency was due to the general business depression. Mrs. Heimovitch paid the attorney for the corporation in the bankruptcy matter his retainer and furnished the money paid to the creditors in pursuance of the agreement of composition, from funds belonging either to her or her minor children, and indorsed the notes given them, upon an agreement that the corporation would transfer all its personal property to her; the notes given were paid out of money received from the operation of the business thereafter and from her own funds; and altogether about $25,000 was paid for these purposes. As regards the corporations subsequently organized to carry on the furniture business, Mrs. Heimovitch transferred to them assets or cash equivalent

in value to the shares issued to her, and Mrs. Rulnick paid the par value of the shares issued to her. Mrs. Heimovitch paid to the corporation organized to hold the Park Street realty in cash, from her own funds or those of her son Richard the equivalent of the shares issued to them, and Mrs. Rulnick paid the par value of the share issued to her, and with this money the property was purchased from the mortgagees who had foreclosed. Mrs. Heimovitch and Mrs. Rulnick also paid into the corporation organized to take over the Greenfield Street property in cash the equivalent of the par value of the shares issued to them and with this money the property was purchased from the mortgagee who had foreclosed; and they also paid into the Hall-Reid Company in cash the equivalent in value of the shares issued to them.

Heimovitch had a right to organize the corporation in June, 1930, and convey his property to it, and subsequently to transfer to his wife and son a large portion of the stock issued to him, whether this was upon an adequate consideration or not, if he did not thereby disable himself from discharging his obligations to his creditors and did not have a fraudulent intent to defeat their claims by conveying away his property or concealing his assets from them. *Katz* v. *Richman*, 114 Conn. 165, 170, 158 Atl. 219; *Dombron* v. *Rogozinski*, 120 Conn. 245, 247, 180 Atl. 453. The claim of the plaintiff that by the transfer to the corporation Heimovitch was left without means to discharge his existing obligations is based upon the fact that after the transfer he was left with a large outstanding indebtedness consisting of obligations secured by mortgages upon real estate; even if the trial court's finding that these debts were amply secured could be stricken out, that requested by the plaintiff to the effect that

Heimovitch was left without sufficient property to discharge his debts cannot be added; and as there are no facts found nor any which we could add to the finding which would obviate the rule that the burden of proof rested upon the plaintiff, he still could not prevail upon this ground. *Dombron* v. *Rogozinski,* supra.

The subsequent loss of value of Heimovitch's stock in the corporation through the bankruptcy proceedings and the transfer of the property to his wife, affords no basis for relief to the plaintiff; the petition in bankruptcy was, as far as the evidence shows, brought against the corporation by creditors in good faith; whether it was in fact insolvent or not, it was adjudicated a bankrupt; unless someone furnished money to the corporation for the composition with its creditors, the interest of the corporation in the assets would have been lost and Heimovitch's stock valueless; if his wife was willing to, and did, furnish from her own funds and those of the children, the money necessary to carry out the composition agreement, in consideration of the transfer of the assets to her, the plaintiff is in no position to claim that the transaction was void as to him. A careful analysis of the exhibits in evidence fails to disclose any tangible evidence that Heimovitch concealed his funds by transferring them to his wife and children. It is true that in November, 1930, he transferred to Gilbert $5500 from his own funds or those of the corporation; he testified that this money was withdrawn because he was fearful of the solvency of the bank in which it was deposited; later it came into the possession of his wife and he also testified that $5000 of it was repaid to the corporation. There is nothing in the exhibits which precluded the trial court from accepting his testimony; and certainly nothing which proved that the purpose was to

conceal assets rather than to make a deposit for safe-keeping which would at most establish an indebtedness of his wife to him or the corporation.

The plaintiff contends that upon all the evidence and particularly upon the facts disclosed by the exhibits it is established that the entire course of the transaction was in pursuance of a purpose on the part of Heimovitch to make a fraudulent disposition of his property in order to defeat the claims of his creditors. The plaintiff seeks numerous corrections in the finding. Of his many requests for additions to it, most do not state undisputed facts or do state circumstances purely evidential or having no material bearing upon the determinative issues in the case. No changes can be made in the finding which could reasonably be held materially to affect those issues. A careful examination of the exhibits tends to support the findings and conclusions of the trial court, and these justify its judgment that no fraudulent conveyance or concealment of his assets by Heimovitch was established.

The plaintiff complains of the fact that the trial court entered judgment for all of the defendants, in disregard of a claim in the complaint for damages, and contends that at least a money judgment should have been entered against Heimovitch. The trial court specifically states in the finding that at no time in the course of the trial or in the briefs thereafter filed did the plaintiff claim a money judgment aside from relief based upon a fraudulent conveyance or concealment of assets and the plaintiff offers nothing which in any way shows this statement to be in error. A claim to recover against Heimovitch upon the debt apart from the claimed fraud was not an issue at the trial of the case and we see no reason for departing from our usual rule that claims not made in the trial court will not

be considered by us.  Practice Book, § 363, and note, page 109.

There is no error.

In this opinion the other judges concurred.