CHARLES SEIGEL *v.* BESSIE HEIMOVITCH ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued December 4, 1941—decided February 5, 1942.

*Wallace W. Brown* and *Louis H. Katz,* with whom was *Charles Welles Gross,* for the appellant (plaintiff).

*Hugh M. Alcorn* and *Aaron J. Palmer,* for the appellee (defendant).

MALTBIE, C. J. In 1933 the plaintiff brought an action to recover upon a note for $40,000 executed by Edward Heimovitch, seeking relief on the ground that he had made fraudulent conveyances, including trans-

fers of money, to the defendants, among whom were his wife, Bessie Heimovitch, and two of their children. No claim was made at the trial of the action for a judgment against Edward upon the indebtedness evidenced by the note. Judgment was given for the defendants, and, on appeal, it was sustained. *Seigel* v. *Heimovitch*, 121 Conn. 207, 183 Atl. 741. Subsequently the plaintiff brought another action against Edward to recover the debt evidenced by the note, and Bessie and two of their children who were of age and she as guardian of the estate of two of their children who were minors were served as garnishees. Judgment was rendered upon a stipulation that the plaintiff recover the debt of Edward. The present proceeding is a scire facias action brought against the garnishees, based upon certain payments of money claimed to have been made by Edward to them. The trial court gave judgment for them and the plaintiff has appealed. The issue is, were the defendants or any of them indebted to Edward or did they have effects of his in their possession at the time the writ in the action was served on them, on November 20, 1936? General Statutes, § 5763.

In order that the plaintiff should prevail, it would not be sufficient merely to prove that Edward paid money to the defendants but he would also have to establish that the circumstances were such that the payments gave rise to a legal obligation on their part to repay it, either because it constituted an indebtedness to him or because, although in their possession, it continued to be his property. It is true that in *Hawes* v. *Mooney*, 39 Conn. 37, we held that property which had been fraudulently conveyed was subject to garnishment, saying (p. 38): "The principle upon which in such cases the creditor may have redress by garnishment, is that the transfer, being fraudulent, is as

against a creditor void; and although the title may pass to the fraudulent grantee as between the parties, yet, as against a creditor, the grantee may be treated as mere trustee and bailee of the goods." The defendants in their answer included a defense of res adjudicata based upon the judgment in the original action, but a demurrer to this defense was sustained. The trial court has found that at the trial the plaintiff repeatedly disclaimed that there was any issue of fraud in the case but that in his trial brief he claimed that there had been a scheme or conspiracy on Edward's part to divert his assets to his family, beyond the reach of his creditors. In this situation it was entirely proper for the trial court to discuss in its memorandum of decision a possible claim that the money had been fraudulently transferred. The statement of claims made at the trial contained in the finding rests the plaintiff's right to recover solely upon the contention that by reason of transfers of money by Edward to the defendants they became indebted to him or had effects belonging to him in their possession. But again, in his brief before us, the plaintiff renews the claim made in his trial brief. In order to recover upon the ground that fraudulent conveyances were made by Edward to the defendants, it would be necessary for the plaintiff to prove that payments of money by him to them were made with a fraudulent intent to defeat the claims of his creditors or were without consideration and had the effect of disabling him from discharging his obligations to them. *Seigel* v. *Heimovitch,* supra, 211. The trial court has not found that the facts necessary to establish either of these situations existed, nor are we requested to add them to the finding. Any issue as to Edward having made transfers of money to the defendants in fraud of his creditors is not before us. The most the plaintiff could

claim would be that he entered upon a plan to protect his money from the vicissitudes of his business by transferring it to the defendants, as evidence that transfers were made with an intent not to vest title to it in them but to preserve his own ownership of it.

The essential issues presented by the appeal are those of fact. The trial court has made a rather extensive finding and the plaintiff seeks numerous corrections and additions to it. Many of the facts he seeks to add could in themselves properly be regarded as admitted or undisputed, but unless qualified by other facts they would give a very incorrect impression. The record presents a series of complicated transactions which counsel for both sides have elucidated in argument and brief with painstaking care and evidently after extensive and zealous study. We have examined the evidence at length in the light of their respective claims but shall not attempt to discuss them in detail except as regards certain of them which concern specific matters.

In 1928 Heimovitch was a wealthy man, the proprietor of a large furniture business in Hartford, having considerable sums of money on deposit in banks and other property. In May, 1930, he incorporated the furniture business. Then or subsequently some of the bank accounts were transferred to the corporation and withdrawals from them were paid to it or into accounts opened in its name, so that within a few months after the corporation was formed only small amounts were on deposit in any bank in his individual name. In January, 1933, involuntary proceedings in bankruptcy were brought against the corporation, a composition agreement was made with its creditors, Bessie advanced the money necessary to pay them and the charges incident to the proceedings and she took over the business. In June, 1933, several corporations

were organized to carry on the furniture business and to manage other property owned by it or the defendants. Bessie advanced the money necessary for their organization, had a large stock interest in them and became and remained the president of each. Previous to the death of her mother in 1929, Bessie had been associated with her in certain business dealings and had realized a substantial amount of money from them. She had also accumulated a considerable sum by saving from allowances made to her and her children by her husband and from sums the children had earned. When Bessie's mother died she left her estate to Bessie and her children and thereafter Bessie retained control of the money except the sum of $5000, a legacy to her eldest son, which, in February, 1930, she paid to him. At the end of 1929 Bessie owned or had control of a sum amounting to about $35,000. A part of this money was in cash in a safe deposit vault and the rest was on deposit in several banks in her own name or the names of the children subject to her control. Thereafter Bessie pursued a course of shifting the money from one account to another, closing existing accounts and opening new ones, withdrawing money from deposit vaults and depositing it in banks and withdrawing it from the banks and placing it in vaults. Aside from certain matters later specifically discussed, the claim of the plaintiff is essentially that in and before 1933 Edward withdrew large sums of money, which, as far as the evidence shows, were not deposited in other accounts; that there was a large increase in the funds in Bessie's possession or control; that the source of this increase must have been the withdrawal of funds made by Edward; that in subsequent years she made expenditures greatly in excess of any sums which the resources

at her disposal would account for; and that these sums must also have come from her husband.

After the death of her mother Bessie had, as already noted, the sum of approximately $35,000 of her own; this was increased by interest earned upon considerable parts of it deposited in savings banks; after her mother's death she owned income-producing real estate and certain mortgages and notes inherited from her mother which were later paid; she received money from one or more of her children who were living at home; and, for a time at least, she continued to receive generous allowances from her husband for household and personal expenses. Up to the time she took over the business, the evidence fails to show any such increase in her holdings of money as would indicate the transfer to her of substantial sums of money by her husband. After she took over the business in 1933, for three months she owned it and could draw upon its resources. After she caused the other corporations to be formed, she owned some 45 per cent of the stock and could draw funds from them substantially as she chose. On the other hand, there is no evidence that, after the bankruptcy of the corporation, Edward had any income from which he could have turned over to her any sums of money. Both Bessie and Edward specifically testified that he did not transfer funds to her, with the exceptions previously noted. There was no direct evidence that he did, and the contention of the plaintiff rests solely upon inferences to be drawn from the facts in evidence. We certainly cannot say, as matter of law, that the trial court should have drawn any such inferences, and cannot hold that it erred in refusing to find that there were transfers made by Edward to the defendants which created an indebtedness on their part to him or which were effects of his in their possession, although had it reached an

opposite conclusion, this might not have been open to attack.

We turn now to the claims of the plaintiff with reference to certain specific matters. The trial court has found that in 1928 and 1929 Edward paid considerable sums to discharge claims and administration expenses in the settlement of the estate of Bessie's mother, of which estate she and her children were the sole beneficiaries, but that Edward was then a man of considerable wealth, the estate held a note of his for $10,000 which was never collected, and these payments did not create an indebtedness of any of the defendants to him. No reasonable attack can be made upon this conclusion. The trial court found that in November, 1930, the sum of $5500 was withdrawn from the accounts of the furniture company, given to the son Gilbert for safekeeping and came into the possession of Bessie, but that she later repaid $4500 of this to the corporation and when bankruptcy intervened advanced to it the money necessary for the compromise with the creditors and took over the business. The only attack the plaintiff makes with reference to this matter is that the money was not money of the corporation but belonged to Edward. It was withdrawn from an account in a savings bank in the name of the corporation which was opened by a transfer from an account which he had previously had in his own name, and this fact with the other testimony in the case amply justified the finding of the trial court that the money was money of the corporation and not the property of Edward.

The trial court found that in the early part of 1931 considerable sums of money, representing loans on policies of insurance on the life of Edward, were deposited in an account opened by Bessie in her name; that she was the beneficiary of these policies and the

assignee of some of them; that she had paid the premiums and thereafter paid the interest on the loans; that some six months later the proceeds of these loans were paid to the furniture corporation; and that the loans did not create an indebtedness on Bessie's part to Edward and were not effects of his in her hands. The finding also states that about a year later the proceeds of similar loans were deposited by Bessie in a bank account in her name; that five days later they were paid to the corporation, the sum being included in a check for a considerably larger amount, and that the sums so deposited by her did not create an indebtedness on her part to Edward. The defendants concede in their brief that a part of this money, realized on the loans of 1931, amounting to less than $500, was not turned over to the corporation or repaid to Edward. Except for this and for the question whether the proceeds of these loans created an indebtedness to Edward or were effects of his in Bessie's hands, the findings require no comment beyond pointing out that they are supported by the evidence. As regards the question whether liability would attach to the defendants because of these transactions, as we have already said, it would not be enough for the plaintiff merely to show that the proceeds of these loans were money of Edward's which he turned over to Bessie but it would also be incumbent upon him to prove that they created an indebtedness on her part to him. At least in so far as the policies had been assigned to Bessie, she might well have had a right in equity to the proceeds of the loans; *Travelers Ins. Co.* v. *Mayo,* 103 Conn. 341, 349, 130 Atl. 379; and the surrender of the money to her may have been in recognition of that right. We cannot hold that the trial court was bound in law to

find that an indebtedness to Edward arose out of these transactions.

In short, we can make no corrections in the finding which would affect the conclusions reached by the trial court, nor hold that those conclusions could not reasonably have been reached by it.

There is no error.

In this opinion the other judges concurred.