## F & W Welding Service, Inc. *v.* ADL Contracting Corporation
### (14068)

Peters, C. J., Shea, Callahan, Glass and Covello, Js.

Argued December 5, 1990—decision released February 26, 1991

*Charles A. Sherwood,* for the appellant (plaintiff).

*Lawrence J. Carboni,* for the appellee (garnishee town of Orange).

GLASS, J. The sole issue in this appeal is whether the money retained (retainage) until completion and acceptance of a contractor's performance under the terms of a municipal construction contract constitutes a "debt due" for purposes of garnishment under General Statutes § 52-329[1] before the contractor completes and the municipality accepts performance. The trial court determined that because the performance of ADL Contracting Corporation (ADL) had not been completed or accepted as required under the unambiguous terms of its contract with the town of Orange (town) at the time that ADL's creditor, F & W Welding Service, Inc. (F & W), served the town with a writ of garnishment, the retainage was not a "debt due" to ADL within the meaning of the statute. We affirm the judgment of the trial court.

---

[1] "[General Statutes] Sec. 52-329. PROCESS OF FOREIGN ATTACHMENT. When the effects of the defendant in any civil action in which a judgment or decree for the payment of money may be rendered are concealed in the hands of his agent or trustee so that they cannot be found or attached, or when a debt is due from any person to such defendant, or when any debt, legacy or distributive share is or may become due to such defendant from the estate of any deceased person or insolvent debtor, the plaintiff may insert in his writ, subject to the provisions of sections 52-278a to 52-278g, inclusive, a direction to the officer to leave a true and attested copy thereof and of the accompanying complaint, at least twelve days before the return day, with such agent, trustee or debtor of the defendant, or, as the case may be, with the executor, administrator or trustee of such estate, or at the usual place of abode of such garnishee; and from the time of leaving such copy all the effects of the defendant in the hands of any such garnishee, and any debt due from any such garnishee to the defendant, and any debt, legacy or distributive share, due or that may become due to him from such executor, administrator or trustee in insolvency, not exempt from execution, shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover."

The relevant facts are as follows. F & W is a Connecticut corporation engaged in the business of selling, renting and servicing heavy construction equipment. ADL is a New York corporation engaged in the business of construction. In 1986, ADL agreed to construct sewer pipelines for the town under the Boston Post Road in Orange. ADL and the town executed a unit price contract, the terms of which required ADL "to fully complete the project within 400 consecutive calendar days" of the date of commencement of performance to be specified in a written "Notice to Proceed." The town's obligation to pay ADL was primarily governed by the General Conditions section of the contract, and particularly paragraph 25 of the General Conditions entitled "Payments to Contractor."

In paragraph 25 (1) (a), the town agreed to make partial payments to ADL in accordance with requisitions submitted by ADL and approved by the town's engineer. The amount of each partial payment was to be calculated by adding the total value of the work then completed to the value of certain stored materials, and deducting the amount of all previous payments as well as the scheduled amount of retainage. The retainage schedule in paragraph 25 (1) (b) provided that the town would retain up to 10 percent of each partial payment claimed until the project was 50 percent complete, after which the retainage would be reduced to 5 percent of each partial payment "provided that [ADL] is making satisfactory progress and there is no specific cause for greater withholding." When the project was "substantially complete," meaning "operational or beneficial occupancy," the retainage was to be reduced below 5 percent "to only that amount necessary to assure completion of the contract work."[2]

---

[2] Paragraph 25 (1) (b) also provided that after the project was 50 percent complete, a cash bond or irrevocable letter of credit "may be accepted in lieu of all or part of the cast retainage . . . ."

"Final payment" was governed by paragraph 25 (2) (a) of the contract. In this provision, it was agreed that "after final inspection and acceptance by the [town] of all work under the Contract," ADL would prepare a requisition for final payment. The amount of the final payment was to be determined by adding the unit prices specified in the contract documents for the computed quantity of each item of work, and deducting the amount of all previous payments. It was further agreed that the town would pay "[t]he entire balance found to be due [ADL] including the retained percentages, but except such sums as may be lawfully retained by the [town] . . . within thirty (30) days of completion and acceptance of the Contract."

During 1987, ADL rented equipment from F & W for use in constructing the pipelines, and F & W serviced that equipment and other equipment used by ADL. Thereafter, in 1988, F & W demanded that ADL pay the amount of $21,069.89 owed for the rental and servicing of the equipment. ADL refused to pay the amount demanded. F & W then applied to the Superior Court pursuant to § 52-329 for a prejudgment remedy authorizing foreign attachment of $25,000 of the retainage held by the town. On July 14, 1988, the court found probable cause to sustain F & W's claim against ADL and entered an order authorizing garnishment of the retainage as requested. On July 28, 1988, the town was served with a writ of garnishment in the amount of $25,000.[3] At that time, the pipelines had been constructed to the extent that sewage could have been pumped through them if the necessary pump stations had been built,[4] but ADL had not yet resurfaced the numerous driveways on the Boston Post Road that had been dug up to allow the installation of the pipelines,

[3] The total amount of retainage then held by the town was $101,415.41.

[4] The contract did not require ADL to construct the pump stations.

and therefore, the pipelines remained exposed. The town had budgeted $94,637.70 for completion of the contract.

Subsequently, ADL encountered financial difficulties and was unable to resurface the driveways. ADL therefore obtained a subcontractor, the Empire Paving Company (Empire), to do the resurfacing work. Empire resurfaced the driveways sometime in early December, 1988, and the town paid for the work on December 15, 1988, with a joint check payable to ADL and Empire in the amount of $90,000.[5] Once the driveways had been resurfaced, on December 21, 1988, the town viewed the contract as "substantially completed."

In late 1988 or early 1989, however, a dispute arose regarding road crossings constructed by ADL that the town's engineers considered defective.[6] On April 14, 1989, ADL notified the town that it would not complete the contract.

In the meantime, F & W had filed an action in the Superior Court seeking to collect from ADL $21,069.89 owed for the rental and servicing of the equipment. On June 9, 1989, the court rendered judgment by stipulation in favor of F & W, and awarded damages to F & W in the amount of $25,153.34. F & W then applied for an execution of the judgment as provided for under General Statutes § 52-356a (a).[7] The execution was

---

[5] The town withheld $5842.41 of retainage in excess of this payment.

[6] The town also maintained that ADL had not done or had improperly done certain landscaping and curbing work required under the contract.

[7] "[General Statutes] Sec. 52-356a. EXECUTION AGAINST CERTAIN NONEXEMPT PERSONAL PROPERTY. (a) PROCEDURE. LEVYING OFFICER'S RESPONSIBILITIES. (1) On application of a judgment creditor or his attorney, stating that a judgment remains unsatisfied and the amount due thereon, and subject to the expiration of any stay of enforcement and expiration of any right of appeal, the clerk of the court in which the money judgment was rendered shall issue an execution pursuant to this section against the nonexempt personal property of the judgment debtor other than debts due from a banking institution or earnings. The application shall be accompanied by

issued on July 20, 1989. When the town refused to pay the execution, F & W filed a motion in the Superior Court pursuant to General Statutes § 52-356b[8] for a turnover order directing the town to pay the amount of the judgment plus interest and costs.

The court held an evidentiary hearing on F & W's motion on October 6, 1989. After the hearing, the court determined that the plain and unambiguous language of the contract permitted the town to hold retainage

a fee of six dollars payable to the clerk of the court for the administrative costs of complying with the provisions of this section which fee may be recoverable by the judgment creditor as a taxable cost of the action. In the case of a consumer judgment, the application shall indicate whether, pursuant to an instalment payment order under subsection (b) of section 52-356d, the court has entered a stay of execution and, if such a stay was entered, shall contain a statement of the judgment creditor or his attorney as to the debtor's default on payments. The execution shall be directed to any levying officer."

[8] General Statutes § 52-356b provides: "COURT ORDER FOR TRANSFER OF SPECIFIED PROPERTY OR EVIDENCE. (a) If an execution is issued, the judgment creditor may apply to the court for an order in aid of the execution directing the judgment debtor, or any third person, to transfer to the levying officer either or both of the following: (1) Possession of specified personal property that is sought to be levied on; or (2) possession of documentary evidence of title to property of, or a debt owed to, the judgment debtor that is sought to be levied on.

"(b) The court may issue a turnover order pursuant to this section, after notice and hearing or as provided in subsection (c), on a showing of need for the order. If the order is to be directed against a third person, such person shall be notified of his right pursuant to section 52-356c to a determination of any interest claimed in the property.

"(c) The court may issue a turnover order against a judgment debtor, without notice or hearing, upon affidavit by the judgment creditor or another competent affiant stating facts from which the court concludes that there is a reasonable likelihood that the judgment debtor is about to remove the property from the state or is about to fraudulently dispose of the property with intent to hinder, delay or defraud his creditors. The court shall expeditiously hear and determine any motion by the judgment debtor to dissolve such an ex parte order.

"(d) Unless directed to a person who is before the court, any turnover order shall be personally served and shall contain a notice that failure to comply therewith may subject the person served to being held in contempt of court."

necessary to ensure full performance of the contract, and did not permit release of the retainage upon substantial completion of performance. Since the contract had not been fully performed at any time up to and including the date of the hearing, the court concluded that the retainage was not due to ADL on the date of garnishment, and as a consequence, the retainage was not garnishable by F & W under § 52-329 for satisfaction of its judgment against ADL. The court found further that even if it were to conclude that the retainage had been due upon substantial completion of performance of the contract in December, 1988, F & W's derivative right to the retainage was subordinate to and would be defeated by the town's claims against ADL for completion of performance and correction of defective work, claims that exceeded the total amount of retainage held. Accordingly, the court denied F & W's motion.[9]

F & W appealed from the order denying its motion to the Appellate Court, and we transferred the appeal to this court in accordance with Practice Book § 4023. F & W now raises two issues for our consideration: (1) whether the court improperly determined that the retainage held by the town was not a "debt due" to ADL under § 52-329; and (2) whether the court improperly determined that its right to garnishment was defeated by the town's claims against ADL since those claims were not liquidated either on the date of garnishment or the date that the court heard F & W's motion for a turnover order. Because we affirm the

[9] Along with its motion for a turnover order, F & W had filed a motion for a determination of interest in the retainage pursuant to General Statutes § 52-356c for the purpose of establishing the priority of its interest in the retainage over the interests claimed by ADL's other creditors. The court found the issue of priority of interests in the retainage moot in light of its determination that the town's claims against ADL exceeded the total amount of retainage held.

judgment on the ground that the retainage did not constitute a "debt due" to ADL under § 52-329, and thus F & W's garnishment of the retainage was ineffective, it is unnecessary to address the second of these issues.

While F & W's arguments are somewhat unclear, its basic claim seems to be that the contract contained no provision concerning the town's use of the retainage, and therefore, the court improperly determined that the town could withhold retainage necessary to ensure full performance of the contract. F & W appears to argue that, rather than to ensure full performance, the retainage was meant to be used by the town to set off any future claim it might have against ADL for work defectively performed. F & W accordingly characterizes the town's obligation to pay the retainage as subject to a condition subsequent, i.e., the debt, although subject to defeasance if the town's subsequent claims exceeded the total amount of retainage held, was nonetheless due on the date of garnishment. F & W also advances the alternative contention that because ADL had substantially completed performance of the contract on the date of garnishment, ADL could have sued the town for recovery of the retainage on that date. F & W therefore claims that for this additional reason, the retainage was a debt due to ADL that it was entitled to garnish as subrogee to the rights of ADL.

The town responds that under the terms of the contract, its obligation to pay the retainage to ADL was subject to dual conditions precedent, namely, ADL's completion of performance of the contract and the town's acceptance of all work required under the contract.[10] In light of ADL's abandonment of the contract

[10] The town also claims that ADL's preparation of a requisition for final payment and the town's final inspection of all work under the contract were additional conditions precedent to its obligation to pay the retainage to ADL. Because we agree with the town that completion and acceptance of the

prior to completing performance, the town argues that at the time of garnishment, none of these conditions had been satisfied. The town therefore maintains that when it was served with the writ of garnishment, the retainage was not a "debt due" to ADL within the meaning of § 52-329. We agree with the town.

"A writ of garnishment subjects to the claims of a creditor only a debt which, at the time of garnishment, was due to the underlying debtor. *Dorr-Oliver, Inc.* v. *Willett Associates,* 153 Conn. 588, 595, 219 A.2d 718 (1966); *Seigel* v. *Heimovitch,* 128 Conn. 543, 544, 24 A.2d 481 (1942)." *Hospital of St. Raphael* v. *New Haven Savings Bank,* 205 Conn. 604, 608, 534 A.2d 1189 (1987); see *William M. Raveis & Associates, Inc.* v. *Kimball,* 186 Conn. 329, 334, 441 A.2d 200 (1982); *Wilber* v. *New Haven Water Co.,* 37 Conn. Sup. 877, 879–80, 441 A.2d 863 (1982). The disposition of this appeal therefore turns upon whether the retainage was a debt due to ADL on July 28, 1988, the date that the town was served with the writ of garnishment.

This court has liberally construed the word "due" in § 52-329[11] to mean "owing" rather than presently payable. *Molloy* v. *Prudential Ins. Co. of America,* 129 Conn. 251, 253–54, 27 A.2d 387 (1942); *Parker, Peebles & Knox* v. *El Saieh,* 107 Conn. 545, 554, 141 A. 884 (1928). A debt is owing and thus available for garnishment if the garnishee has an existing obligation to pay the debtor either in the present or the future. *Ransom* v. *Bidwell,* 89 Conn. 137, 141, 93 A. 134 (1915). An obligation to pay the debtor in the future is "existing" if the garnishee's liability to pay the obligation is certain. Id., 141–42; see generally E. Stephenson,

---

contract were conditions precedent to the town's obligation, and we hold below that the absence of satisfaction of those conditions on the date of garnishment was sufficient to defeat the attempted garnishment, we need not consider this claim.

[11] See footnote 1, supra.

Connecticut Civil Procedure (2d Ed.) § 66a; 6 Am. Jur. 2d, Attachment and Garnishment §§ 120, 126. If an obligation is certain as to liability, it is not rendered uncertain merely because the debt is unliquidated, that is, the amount that the garnishee ultimately will be obligated to pay is presently uncertain. *Calechman* v. *Great Atlantic & Pacific Tea Co.,* 120 Conn. 265, 270, 180 A. 450 (1935); see *Chambers* v. *Blickle Ford Sales, Inc.,* 313 F.2d 252, 259 (2d Cir. 1963). Furthermore, the garnishee's otherwise certain liability is not made uncertain because the obligation may be diminished or defeated by a condition subsequent. See *Calechman* v. *Great Atlantic & Pacific Tea Co.,* supra.

Where, however, the garnishee's obligation is subject to a condition precedent, it is not an existing obligation because the condition renders the liability to pay the obligation uncertain in the sense that the condition may never be satisfied, and therefore, the garnishee may never become liable to pay the debtor. See *Molloy* v. *Prudential Ins. Co. of America,* supra, 254; *Ransom* v. *Bidwell,* supra, 142; see also *Dick Warner Cargo Handling Corporation* v. *Aetna Business Credit, Inc.,* 700 F.2d 858, 862 (2d Cir. 1983); *First Central Coast Bank* v. *Cuesta Title Guarantee Co.,* 143 Cal. App. 3d 12, 15–17, 191 Cal. Rptr. 433 (1983); *Fico, Inc.* v. *Ghingher,* 287 Md. 150, 160–61, 411 A.2d 430 (1980); see generally E. Stephenson, supra. Consequently, the garnishee's debt is neither owing nor due until the condition is satisfied, and before that time, any attempted garnishment of the debt necessarily fails. See, e.g., *Finch* v. *Great American Ins. Co.,* 101 Conn. 332, 335–36, 125 A. 628 (1924); *Sand-Blast File-Sharpening Co.* v. *Parsons,* 54 Conn. 310, 312–13, 7 A. 716 (1886). This principle defeats garnishment of a debt where the garnishee's obligation is conditioned upon further performance; see 6 Am. Jur. 2d, Attachment and Garnishment § 129; and as we have stated in the particular

context of construction contracts, "money to become due upon the completion of a building contract is not subject to garnishment before the contract is completed." *Calechman* v. *Great Atlantic & Pacific Tea Co.*, supra, 271; see *Cunningham Lumber Co.* v. *New York, New Haven & Hartford R. Co.*, 77 Conn. 628, 631–33, 60 A. 107 (1905); *Coburn* v. *Hartford*, 38 Conn. 290, 293 (1871); see also *Brady* v. *Lichter*, 328 Mass. 124, 128, 102 N.E.2d 402 (1951); see generally 6 Am. Jur. 2d, supra, § 130.

Because the town's obligation to pay the retainage to ADL originates in the contract, the validity of F & W's attempted garnishment depends on the nature of that obligation as defined by the terms of the contract. " 'Whether the performance of a certain act by a party to a contract is a condition precedent to the duty of the other party to act depends on the intent of the parties as expressed in the contract and read in light of the circumstances surrounding the execution of the instrument.' " *Christophersen* v. *Blount*, 216 Conn. 509, 512, 582 A.2d 460 (1990); *Ravitch* v. *Stollman Poultry Farms, Inc.*, 165 Conn. 135, 149, 328 A.2d 711 (1973); *Lach* v. *Cahill*, 138 Conn. 418, 421, 85 A.2d 481 (1951). In searching for the intent of the parties as expressed in a contract, all relevant provisions of the contract must be considered together. *Bialowans* v. *Minor*, 209 Conn. 212, 217, 550 A.2d 637 (1988). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Barnard* v. *Barnard*, 214 Conn. 99, 110, 570 A.2d 690 (1990).

The terms of the contract unambiguously impose duties upon both parties to perform certain acts before the town would have a duty to pay the retainage to ADL. The contract expressly states that the retainage, as part of the balance ultimately found due to ADL, shall be paid to ADL "within thirty (30) days of com-

pletion and acceptance of the contract." That "completion" and "acceptance" meant full performance and acceptance of that full performance is evident from the fact that the parties envisioned payment of the retainage to accompany the "final payment" to ADL, the requisition for which was to be submitted by ADL "after final inspection and acceptance by the [town] of all work under the contract." The parties' intent that ADL complete performance of the contract before the town was obliged to pay the retainage is further expressed in the contract provisions governing the calculation and deduction of retainage. The retainage provisions distinctly tie the systematic reduction of retainage deducted to the various stages of the contract as it progressed toward completion, and contemplate the withholding of retainage beyond the point of substantial completion "to only that amount necessary to assure completion of the contract work." There is no indication that the purpose for withholding retainage was to provide the town with a fund that it could use to set off any future claim against ADL for defective performance.

In view of these unambiguous provisions, we conclude that the parties intended to make ADL's completion of performance of the contract and the town's acceptance of that completed performance conditions precedent to the town's obligation to pay the retainage to ADL. Since these conditions had not been satisfied on the date of garnishment, the town had no existing obligation to pay the retainage to ADL and hence no debt due to ADL that could be reached by garnishment process under § 52-329. Accordingly, the trial court properly determined that the retainage was not subject to garnishment by F & W for satisfaction of its judgment against ADL.

We are likewise unpersuaded by F & W's alternative contention that the retainage was nonetheless a

debt due to ADL since ADL substantially completed performance of the contract before the date of garnishment and thus could have sued the town to recover the retainage on the date of garnishment. While there is support in our case law and that of other jurisdictions for the proposition that the money payable to a contractor who substantially completes performance of a contract may constitute a debt due to the contractor under certain circumstances; see *Ransom* v. *Bidwell,* supra; see also *Able Distributing Co.* v. *Lampe,* 160 Ariz. 399, 403, 773 P.2d 504 (1989), and authorities cited therein; F & W ignores the court's specific factual finding that the contract was not substantially completed until December, 1989, some five months after the date of garnishment. Consequently, even if ADL could in fact have recovered the retainage upon substantial performance of the contract, any possible cause of action by ADL against the town would not have accrued until after the date of garnishment. The validity of a garnishment, as we have stated, must be determined not from hindsight, but by evaluating the status of a debt at the time of service of the writ of garnishment. *Hospital of St. Raphael* v. *New Haven Savings Bank,* supra.

Furthermore, F & W's claim is premised upon the assumption that because ADL did not directly perform any work for the town after the date of garnishment, ADL's role in the substantial completion of the contract dates back before service of the writ of garnishment to the date that the town made its last partial payment for work directly performed by ADL on June 24, 1988.[12] While ADL did not directly perform

[12] In this respect, we note that the record reveals that ADL did in fact directly perform work required under the contract subsequent to the date of garnishment. ADL submitted a requisition for partial payment for this work on February 2, 1989. The requisition was approved by the town on June 1, 1989, but not paid due to the various claims against the retainage asserted by ADL's creditors.

the resurfacing work that effectuated substantial completion of the contract, that work was required of ADL under the contract, and was performed by a subcontractor obtained by ADL and paid with a check upon which ADL was named as a joint payee. Even if we were to agree with F & W, notwithstanding these factors, that ADL's performance consists only of the work directly performed by ADL, it would follow that directly, ADL never substantially performed the contract. Therefore, the logical extension of the very premise underlying F & W's claim prevents it from successfully invoking the authorities concerning garnishment of money payable upon substantial performance of a construction contract.

The judgment is affirmed.

In this opinion the other justices concurred.