[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The present proceedings involve the plaintiff, James T. Kay Co., Inc. (hereinafter Kay) and a garnishee Waterbury Development Agency (hereinafter the Agency). The court must decide whether to enforce Kay's application for a turnover order made pursuant to General Statutes Section 52-356b and must determine whether Kay has an interest in money that the Agency possesses as required by Section 52-356C. Set forth below are facts which have been found from the admissions of the parties, an examination of the file, CT Page 1080 the testimony of the Agency's executive director, Howard Ploman at the recent hearing and the exhibits introduced at the hearing. These facts help to put the dispute into proper perspective.
 I.
Some time in 1987, the Agency entered into a contract with J.H. Hogan, Inc. for the construction of Buckingham Square Parking Garage. Because the contract was for the construction of a public structure in excess of $25,000.00, a bond was required pursuant to General Statutes Section 49-41. J.H. Hogan, Inc. posted a bond with Hartford Accident Indemnity Co. as surety in the amount of $4,297,600.00.
Kay was the subcontractor who was engaged by J.H. Hogan, Inc. to provide plumbing materials and services as required by Hogan's contract with the Agency. No privity of contract, however, existed between Kay and the Agency.
J.H. Hogan, Inc. failed to pay Kay who, in turn, instituted this action against Hogan and The Hartford Accident Indemnity Co. The complaint alleged breach of contract and unjust enrichment against J.H. Hogan, Inc. and liability on the bond against Hartford Accident Indemnity Co. On July 15, 1991, Kay received a summary judgment in the amount of $36,860.26 on its breach of contract drawn against J.H. Hogan, Inc. With respect to Hartford Accident Indemnity Co., the file does not indicate a final disposition. Kay admitted, however, that it could not successfully pursue its cause of action against Hartford Accident Indemnity Co. because, as alleged in the surety's special defense, it had failed to comply with the notice and other requirements of Section 49-42.
The Buckingham Square Parking Garage was turned over to the City of Waterbury in October of 1989. Remaining with the Agency is $181,000.00 which is being held pursuant to the contract for completion by J.H. Hogan, Inc. of "punch list" items. The City, and its development agency, also has a claim against J.H. Hogan, Inc. for legal fees incurred in defending against Hogan's subcontractors including another suit brought by Kay. Mr. Ploman estimated the cost of the punch list items at $20,000.00 and the legal fees at $16,000.00.
The sum total of the debts owed to subcontractors by J.H. Hogan, Inc. is $360,000.00. The Agency's position is that after deducting the $36,000.00 owed to the city, it plans to make pro rata payments to all subcontractors. At the present time, Kay is the only subcontractor who is actively pursuing a claim.
II. CT Page 1081
Before concentrating on the issues, it is advisable to discuss briefly the effect of Kay's non-compliance with Section49-32. The precursors to Section 49-31 (requirement of a bond for public construction) and Section 49-32 (procedures to be followed before suit can be brought on the bond) were enacted in response to Supreme Court holdings that a mechanics lien does not attach and cannot be enforced against the public property of the state or its political subdivisions. International Harvester Co. v. L.G. DeFelice Son, Inc., 151 Conn. 325, 331 (1964). For subcontractors and suppliers who do not have privity of contract with the government, a suit on the bond is the exclusive remedy and actions based upon implied or quasi contract and quantum meruit are prohibited. Kerite Co. v. Norwalk, 32 Conn. Sup. 168,171-72 (1975). Kay's inability to sue the Agency directly or to recover on the bond has promoted the rather circuitous route of attempting to recover as a judgment creditor of J.H. Hogan, Inc.
Both Kay and the Agency appreciate the value of FW Welding Service, Inc. v. ADL Contracting Corporation, 217 Conn. 507 (1991) as precedent. In that case, where the validity of a garnishment was at issue, the Supreme Court acknowledged that in prior decisions it had liberally construed the term "debt due" in Section 52-329, the garnishment statute, to mean "debt owing" rather than "debt presently payable." But, as the court stated, "where, however, the garnishee's obligation is subject to a condition precedent, it is not an existing obligation because the condition may never be satisfied, and therefore, the garnishee may never become liable to pay the debtor". 217 Conn. at 515, 516.
Since the Agency's obligation to pay rests upon its contract with J.H. Hogan, Inc., the validity of Kay's status as Hogan's garnisheeing creditor depends on how the contract is interpreted. FW Welding Service, Inc. v. ADL Contracting Corporation, supra at 517. A contract must be construed to effectuate the intent of the contracting parties and all of its relevant provisions should be considered together. Barnard v. Barnard, 214 Conn. 99, 109
(1990). "A condition precedent is a fact or event which the parties [to a contract] intend must exist or take place before there is a right to performance." Christopherson v. Blount,216 Conn. 509, 512 (1990) quoting from Lach v. Cahill, 138 Conn. 418,421 (1951). Whether the performance of a certain act by a contracting party is a condition precedent to the duty of the other party to act depends on their intent as expressed in the language of their contract. Christopherson v. Blount, supra.
The particular section of the contract dealing with monies retained by the Agency is Section 415, in the special conditions, entitled "Guarantee Retainer." Section 415 reads as follows: CT Page 1082
 Following the completion of the work and the final acceptance thereof as previously defined and as soon thereafter as practicable, the Engineer will make a final estimate of the amount of work done by the contractor and of the value thereof. Upon such estimates being made and certified by the engineer and approved by the City, the Agency will pay to the contractor the full value of the work done under this contract less any amounts previously paid, and 5% or $2500 whichever is the greater percent of the full value of said work, which shall be held as a retainer in guarantee against defect of materials, workmanship or other contract performance for a period of six (6) months from date of acceptance.
 Within seven (7) months after the acceptance of the work as hereinbefore provided, and provided further that any repairs necessitated by defect in material or workmanship as defects in material or workmanship as determined by the City shall have been made, the Agency, upon certification by the City that the terms of the contract have been complied with and the work and the performance of the contract itself completed, will pay to the contractor the whole sum retained by the Agency as a guarantee retainer or such party thereof as may remain after the expense of making repairs shall have been made in the manner hereinbefore provided, and the acceptance of such final payment will terminate this contract and will release all parties hereunder except for bonds covering plantings and/or existing tree protection.
The court has considered Section 415 alone and in connection with related sections particularly Section 407[1] of the special conditions and Sections 133,[2] 183[3] and 129[4] of the general conditions. Section 415 is determined to be a condition precedent meaning that J.H. Hogan, Inc. and the Agency are found to have intended that if, after final acceptance, defects were found to exist Hogan became required to CT Page 1083 remedy such defects before the Agency would have the duty to pay the guarantee retainer. Because J.H. Hogan, Inc. has not made the corrections specified on the Agency's punch list, the Agency's duty to pay the guarantee retainer never has come into being. Ravitch v. Stollman Poultry Farms, Inc., 165 Conn. 135,149 (1973). Consequently there was no debt due to J.H. Hogan, Inc. from the Agency on October 23, 1991 when Kay presented to execution or subsequently when Kay presented its application for a turnover order or its motion for a determination of interests to the court. FW Welding Service, Inc. v. ADL Contracting Corporation, supra at 516-17.
Kay has read FW Welding v. ADL Contracting Corporation too broadly. The primary question is whether from the contract there is a debt due on which execution may be had not whether the contract was substantially performed. See 217 Conn. at 518-19.
 III.
The application of the plaintiff (Kay) for a turnover order and the motion of the plaintiff (Kay) for a determination of interests in personal property are denied.
BARNETT, J.