**In re Aaron P. SILVER, Debtor.**

**PEPSI–COLA NEWBURGH BOTTLING CO., d/b/a Pepsi–Cola Bottling Company of Bristol, Plaintiff,**

**v.**

**Aaron P. SILVER, Bristol Savings Bank, Paul Silver, Elaine E. Silver and Anthony Novak, as Trustee of Aaron P. Silver, Debtor, Defendants.**

**Bankruptcy No. 2–93–00240.
Adv. No. 2–93–2110.**

United States Bankruptcy Court,
D. Connecticut.

March 18, 1994.

Barry S. Feigenbaum, Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, CT, for defendant-debtor Aaron P. Silver.

Richard M. Porter, Bergman, Horowitz & Reynolds, P.C., New Haven, CT, for defendant Paul Silver.

Richard M. Leibert and Edward P. Jurkiewicz, Hunt, Leibert, Chester & Pontacoloni, P.C., Hartford, CT, for defendant Bristol Sav. Bank.

Anthony S. Novak, Chorches & Novak, Wethersfield, CT, for defendant-trustee.

Stephen B. Delaney, Silvester, Daly & Delaney, Hartford, CT, for defendant Elaine Silver.

**16**

William F. Macreery, McCarthy, Fingar, Donovan, Drazen & Smith, Scott G. Grubin, Schatz & Schatz, Ribicoff & Kotkin, Stamford, CT, for plaintiff.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### ISSUE

The matters before the court are motions for summary judgment brought by two defendants in an adversary proceeding commenced by Pepsi–Cola Newburgh Bottling Co., Inc. (Newburgh) as a Fed.R.Bankr.P. 7022 interpleader action. Newburgh seeks to have the court determine the rights to the proceeds of a noncompetition agreement and a consulting agreement in which Newburgh is a party-payor. The defendants in this action are Aaron P. Silver, the debtor, Anthony S. Novak, the trustee of the debtor's chapter 7 estate, Paul Silver (Paul) and Elaine E. Silver (Elaine), both creditors who allegedly hold prepetition security interests in one or both of the agreements, and Bristol Savings Bank (the Bank), claiming an interest in the proceeds of the agreements as a result of two prepetition garnishments of Newburgh.

The debtor filed a motion for summary judgment contending that the Bank has no cognizable claim to any proceeds from the agreements because at the time the Bank

served its garnishment process on Newburgh, no debt was then due and owing the debtor. Paul filed a like motion denying the validity of the Bank's garnishment and also contending that the debtor's prepetition assignment to him of benefits under the consulting and noncompetition agreements was properly perfected and is not avoidable by the trustee. The Bank has filed responsive papers to both motions contending that there are genuine issues to be tried as to material facts. The trustee has not responded to Paul's motion.

### II.

### BACKGROUND

The debtor and his brothers, Paul and Stephen, were the principals of Elco Beverage Company (Elco), a Connecticut corporation engaged in the soft-drink business. On January 23, 1990, Newburgh purchased substantially all of Elco's assets for approximately $14,000,000. Pursuant to the asset purchase, Newburgh, on January 23, 1990, entered into separate five-year consulting agreements with each of the three Silver brothers under which they were each paid $100,000 a year in return for being available for consulting services to Newburgh up to sixty hours each year.[1] Newburgh, on the same date, also entered into separate noncompetition agreements with the Silvers under which they each were to receive $1,250,000 payable in five annual installments of $250,000 in return for promises not to compete with Newburgh.[2] Both agreements

---

1. The consulting agreement required the Silvers to be

   available during regular business hours to render such executive type consulting services ... provided that Consultant shall not be required to provide services in excess of sixty hours per year. The failure of [Newburgh] to use the services of Consultant shall not negate its obligation to pay the compensation hereunder.

   In return for their consulting services each Silver was to be paid

   over a period of five years at the rate of $100,000.00 per annum, payable in advance on the date hereof and on the same day of each following calendar year during the term hereof ... or, if [Silver] is not living to the beneficiary or beneficiaries designated in his will by Consultant or if none to his estate, in accordance with the same schedule of payment.

Consulting Agreement ¶ 2,3.

2. Under the noncompetition agreement each Silver

   agrees that for a period of five years from and after the date hereof he will not ... be employed by or associated with or carry on, any business which is engaged in ... any ... wholesale business which is similar to the business now being conducted by the Seller within [the defined territory]....

   As consideration for this promise not to compete, Newburgh was

   to pay to Silver, or if he is not living to his estate, $1,250,000.00, payable in five annual installments in advance, each in the amount of $250,000 ... with the first payment being made on the date hereof and the remaining

with the debtor contained death-benefit clauses by which payments were to continue to the Silvers' estates in the event of their death before the end of the five-year period. The agreements provided that Newburgh would be liable for the immediate payment of "the entire unpaid balance of the Installment Payments" if Newburgh defaulted (a) in the payment of any installment in either agreement for 10 days, (b) in a lease payment due the "Silver Realty Partnership," and (c) in the payment of any amount due the other two Silver brothers under their agreements. An event of default was also a sale of Newburgh's assets, a transfer of more than 50% of Newburgh's capital stock, or Newburgh's liquidation, merger or consolidation. There are no explicit default provisions concerning the debtor's obligations under either agreement. The agreements contained a choice of law provision specifying that New York law apply.

Newburgh apparently made the required payments due January 23rd of 1990, 1991, and 1992. On April 20, 1992, the Bank served two garnishments upon Newburgh to secure claims for judgments sought in state-court actions against the debtor. Notwithstanding these garnishments, the debtor, on September 29, 1992, executed a Collateral Assignment of Contract Rights to the extent of $150,000 of payments under both agreements to Paul as security for a loan, and, sometime later, pursuant to a state-court judgment, assigned his remaining interest in payments under the noncompetition agreement to his former wife Elaine.

On January 22, 1993, one day before the payment anniversary date, the debtor filed his Chapter 7 petition. Newburgh filed its interpleader action on March 23, 1993. On July 8, 1993, Newburgh, pursuant to a consented-to court order, transferred $350,000, representing the debtor's 1993 combined an-

nual payments, to the trustee to be held in escrow pending a determination of the parties' rights to the funds.

The Bank claims that its garnishments, served on or about April 20, 1992 and each exceeding $600,000 in amount, of all remaining payments under the agreements gives it rights superior to the other claimants.

The debtor claims that the remaining payments under the consulting agreement are not property of the estate and that he is entitled to the payments thereunder, subject to Paul's security interest, as postpetition compensation for personal services.

The trustee claims that the payments under both the agreements are property of the estate and that the debtor's prepetition assignments to Paul and Elaine are avoidable.

### III.

### DISCUSSION

#### A.

■ Funds in the hands of a third party are subject to garnishment under Conn.Gen. Stat. § 52–329[3] only if the third party's obligation to pay those funds is not contingent. *Dick Warner Cargo Handling Corp. v. Aetna Business Credit, Inc.,* 700 F.2d 858, 862 (2d Cir.1983) ("Connecticut cases require that for a debt to be subject to garnishment, the debt must be due and not contingent."). Funds paid pursuant to a contract, therefore, are garnishable only "if the garnishee has an existing obligation to pay the debtor either in the present or the future. An obligation to pay the debtor in the future is 'existing' if the garnishee's liability to pay the obligation is certain." *F & W Welding Serv., Inc. v. ADL Contracting Corp.,* 217 Conn. 507, 515–16, 587 A.2d 92 (1991) (citing *Ransom v. Bidwell,* 89 Conn. 137, 141, 93 A. 134 (1915)).

installments on the same day of each succeeding calendar year commencing with the anniversary of the date hereof.
Non–Competition Agreement ¶ 1,3.

**3.** Section 52–329 provides:
[W]hen a debt other than earnings ... is due from any person to such defendant, ... the plaintiff may insert in his writ, ... a direction to the officer to leave a true and attested copy

thereof and of the accompanying complaint, at least twelve days before the return day, with such ... debtor of the defendant ...; and from the time of leaving such copy ... any debt due from [the] garnishee to the defendant ..., not exempt from execution, shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover.
Conn.Gen.Stat. § 52–329.

The movants contend that since Newburgh's obligation to make payments under the agreements was conditioned upon the debtor's continued performance under the consulting agreement and forbearance under the noncompetition agreement, as a matter of law there was, on April 20, 1992, no noncontingent debt due the debtor under either agreement, and the garnishments were not effective. In reply, the Bank argues that summary judgment is inappropriate at this juncture because genuine issues of fact exist concerning whether Newburgh's obligation to pay the debtor under the agreements was conditioned upon the debtor's continued performance under the terms of those agreements or if, in fact, the debtor's right to compensation was unconditional. The Bank contends that "the principal purpose of the consulting and non-competition agreements is to defer payments for Newburgh, the buyer, and to defer income, for tax purposes, to the debtor." Bank's Brief at 13–14. The Bank argues that the agreements between Newburgh and the debtor may be disguised allocations of the purchase price and not personal service agreements, and that Newburgh's obligation to make payments under those agreements was not intended to be conditioned upon the performance and forbearance of the debtor.

In support of its position, the Bank points to the deposition testimony of C. Thomas Tenney, Jr., Newburgh's president and signatory to the agreements with the debtor. The Bank directs attention to Mr. Tenney's response to the question: "With respect to the consulting agreement, if during 1994, which is the year coming up, Aaron Silver does not consult with you whatsoever, will you be required to pay him?" Mr. Tenney replied: "I made a commitment to somebody, I'm required to pay him. I signed that document, in my mind, I owe him the money." Tenney Deposition at 92.

### B.

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), *incorporated by* Fed.R.Bankr.P. 7056. A dispute concerning a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts have been denominated as those facts that might affect the outcome of the suit under governing law. *Id.* The moving party has the burden of proving that no material facts are in dispute, and in considering such a motion, the court " 'must resolve all ambiguities and draw all reasonable inferences in favor' of the nonmoving party...." *Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir.1993) (quoting *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)).

The court finds, taking into account the provisions of the agreements and submitted discovery material, that the Bank has raised as a material issue of fact the true nature of the agreements between Newburgh and the debtor. The use of consulting or non-competition agreements as a method of manipulating tax and other consequences of a sale is not an uncommon phenomenon. *See, e.g., In re Moreno*, 892 F.2d 417 (5th Cir.1990) (reversing finding of bankruptcy and district courts that debtor intended to hinder, defraud, or delay creditors by accepting consideration for purchase of controlling stock in corporation in the form of a consulting agreement); *Balthrope v. Comm'r*, 356 F.2d 28 (5th Cir.1966) (declining to find consulting agreement in connection with asset sale to be sham for tax purposes); *Pupecki v. James Madison Corp.*, 376 Mass. 212, 382 N.E.2d 1030 (1978) (finding that complaint which alleges the diversion of consideration from sale of corporation to controlling shareholder under guise of employment and noncompetition agreements sufficiently pleads illegality or fraud to render summary judgement improper); *cf. also In re Marshall*, 33 B.R. 42 (Bankr.D.Conn.1983) (sustaining creditor's objection to compromise concerning debtor's claimed exemptions and ordering trial to determine if debtor's "employment contract is a

disguised allocation of a purchase price and not a personal services contract").

## IV.

### CONCLUSION

For the above-mentioned reasons, both motions for summary judgment against the Bank are denied.

 Because the trustee failed to submit a memorandum in opposition to Paul's motion for summary judgment against the trustee, summary judgment is granted as to the trustee's claim against Paul's security interest in the agreements. *See* Local R.Civ.P. 9(a)(1) ("Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."), *incorporated by* Local R.Bankr.P. 1(b).[4]

---

4. Filed as exhibits to an affidavit by counsel for Paul are copies of a $150,000 promissory note, a Collateral Assignment of Contract Rights, and a filed UCC–1 financing statement.